COURT OF APPEALS OF TENNESSEE

AT KNOXVILLE

FILED

March 26, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| CAROLYN DRAKE MARTIN, | ) | C/A NO. 03A01-9708-GS-00323 |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | APPEAL AS OF RIGHT FROM THE LOUDON |
| | ) | COUNTY GENERAL SESSIONS COURT |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| DONALD WAYNE MARTIN, | ) | |
| | ) | HONORABLE JOHN O. GIBSON, |
| Defendant-Appellee. | ) | JUDGE |

For Appellant

JEAN MUNROE
Knoxville, Tennessee

LAURA RULE HENDRICKS
Eldridge, Irvine & Hendricks
Knoxville, Tennessee

For Appellee

LOREN E. PLEMMONS
Lenoir City, Tennessee

O P I N I O N

VACATED IN PART
AFFIRMED IN PART
REMANDED WITH INSTRUCTIONS

Susano, J.

This is a divorce case. Following a bench trial, the lower court took the parties' issues under advisement. A week later, the court filed its memorandum opinion. It subsequently entered a final judgment, which awarded the parties joint custody of their three children; designated Carolyn Drake Martin ("Wife") as the residential custodian during the school year and Donald Wayne Martin ("Husband") as the residential custodian during the summer months; established co-parenting times for each parent; awarded Wife monthly child support of $1,000, but reduced the support to $250 per month during the summer months; and denied Wife's request for alimony and attorney's fees. Wife appealed, arguing that she should have been awarded sole custody, and that the co-parenting times should be changed. She also contends that the trial court erred in failing to award her rehabilitative alimony and in failing to grant her request that Husband pay her attorney's fees. By a separate issue, Husband also challenges the co-parenting times. In addition, he contends that the trial court did not properly calculate child support.

I. *Background*

Wife filed for divorce on April 17, 1995. Following a short-lived reconciliation, Husband filed an answer and counterclaim. Both parties sought the sole custody of their minor children, Zachary Scott Martin (DOB: December 9, 1985), Kelly Hamlin Martin (DOB: June 28, 1988), and Erin Taylor Martin (DOB: December 31, 1991). Wife also sought alimony and her attorney's fees.

2

On February 28, 1997, the parties signed a marital dissolution agreement. It was filed with the trial court the same day. On March 10, 1997, new counsel for Husband filed a motion to set aside the marital dissolution agreement and asked for permission to pursue his counterclaim.

This matter proceeded to trial on March 17, 1997. At the commencement of the trial, the court inquired of the parties as follows:

> What are we arguing about in this case, everything?

Counsel for Husband, Ms. Plemmons, responded: "Custody, mainly, Your Honor." Counsel for Wife did not express any disagreement with his adversary's statement. The transcript -- some 235 pages in length -- bears out counsel's statement. There was essentially no testimony regarding the parties' property. At the conclusion of the proof, and before argument, the trial court and counsel engaged in the following colloquy:

> THE COURT: Now, I want you to understand one thing. Nobody has given me anything about property at all except for one thing, $55,000 --
>
> MR. HYMAN: $58,000.00.
>
> THE COURT: Well, ever what it was, the retirement thing.
>
> *     *     *
>
> THE COURT: Well, I am just telling you, that is the only thing about property that I have in here.
>
> MR. HYMAN: There is a reason --

3

THE COURT: This is a child custody case --

MR. HYMAN: That is right. There is a couple of reasons for that, but --

THE COURT: Okay.

(A break was had.)

MR. HYMAN: Your Honor, please, we have got a stipulation as to the property settlement. Thirty days after entry of the final judgment in this case, Mr. Martin will pay $20,000.00 as a lump sum rehabilitative alimony to Ms. Martin. And with that understanding, that is the only --

THE COURT: Well, really a property -- is it a property division?

MS. PLEMMONS: Well --

MR. HYMAN: The personal property has already been divided and the real estate has already been equitably divided, that was sold a year and a half ago, so that takes care of all the property issues, I believe.

MS. PLEMMONS: It is going to be paid in full as soon as the order is final, so I don't care if he wants to call it alimony, it doesn't matter. That is what it represents. It is a cash payment for her to have now versus a QDRO on the retirement.

THE COURT: Well, it might be taxable if you call it alimony, income tax. You can call it a property division and it won't be taxable. There will be a lot of difference to her.

MR. HYMAN: Well, we can call it -- that is fine.

As noted later in this opinion, the parties also devoted very little attention at trial to the subject of alimony, including the topic of attorney's fees.

The decree of divorce was entered April 2, 1997. After reciting that each of the parties is entitled to a divorce on the ground of inappropriate marital conduct, the decree provides that

4

"[n]o alimony should be awarded to either party, and each party should bear their own attorney's fees."  The court noted that it found

> ...that [Mother] could match the income of
> [Father] by working full time, as he does, if
> she really decided to do so, as she has a
> much better education than he has.

On the subject of custody, the trial court awarded joint custody, with an interesting preamble:

> Provided the Mother refrains from so many
> bicycle trips and membership in the bike
> club, then she is the best person to have
> primary physical custody of the parties'
> minor children during the school year.  The
> Court specifically finds that because it is
> going to be necessary for the mother to work
> full time and to also care for the children,
> that she would not have the time she has been
> devoting in the past to her bicycle hobby,
> and still be a good mother; failing this,
> then the Court most likely would look
> favorably upon making a change.  Accordingly,
> the parties shall have Joint Custody of the
> parties' minor children..., with the primary
> custody and primary residence during the
> school year being with the Mother; the Father
> shall have the primary custody and primary
> residence from the second Monday in June of
> each year until the third Sunday in August of
> each year.  Joint Custody is defined as equal
> input by both parties as to decision making
> for the children's general welfare, health,
> education and extra-curricular activities.

The final decree then borrows, essentially verbatim, some fourteen paragraphs from the marital dissolution agreement repudiated by Husband.  The paragraphs are headed and/or deal with the following subjects: the children's IRS exemptions, telephone calls to the children, the exchange of information

5

between the parents, exchanges of the children, transportation arrangement regarding the children's visitation, medical expenses, behavioral injunction, Thanksgiving, Christmas, Easter/Spring break, special holidays, Mother's Day, and Father's Day.

The decree, in effect, approves the parties' property settlement as set forth in the marital dissolution agreement, with the one modification as announced to the court regarding the payment of $20,000 to Wife.

II.  *Standard of Review*

In this non-jury case, our review is *de novo* upon the record of the proceedings below; but the record comes to us with a presumption of correctness that we must honor "unless the preponderance of the evidence is otherwise."  Rule 13(d), T.R.A.P.  *See also* **Hass v. Knighton**, 676 S.W.2d 554, 555 (Tenn.App. 1983).  Our search for the preponderance of the evidence is tempered by the principle that the trial court is in the best position to assess the credibility of the witnesses; accordingly, such credibility determinations are entitled to great weight on appeal.  **Massengale v. Massengale**, 915 S.W.2d 818, 819 (Tenn.App. 1995); **Bowman v. Bowman**, 836 S.W.2d 563, 566 (Tenn.App. 1991).  In fact, this court has noted that

> ...on an issue which hinges on witness
> credibility, [the trial court] will not be
> reversed unless, other than the oral
> testimony of the witnesses, there is found in

6

the record clear, concrete and convincing evidence to the contrary.

*Tennessee Valley Kaolin Corp. v. Perry*, 526 S.W.2d 488, 490 (Tenn.App. 1974).

III. *Applicable Law*

Custody determinations by trial and appellate courts are subject to a number of statutory provisions. The following legislative enactments are pertinent to the facts of this case:

T.C.A. § 36-6-101[1]

(a)(1) In a suit for...divorce..., where the custody of a minor child or minor children is a question, the court may...award the care, custody and control of such child or children to either of the parties to the suit or to both parties in the instance of joint custody or shared parenting, or to some suitable person, as the welfare and interest of the child or children may demand,...

(2) Except as provided in the following sentence, neither a preference nor a presumption for or against joint legal custody, joint physical custody or sole custody is established, but the court shall have the widest discretion to order a custody arrangement that is in the best interest of the child. Unless the court finds by clear and convincing evidence to the contrary, there is a presumption that joint custody is in the best interest of a minor child where the parents have agreed to joint custody or so agree in open court at a hearing for the purpose of determining the custody of the minor child....

* * *

(d) It is the legislative intent that the gender of the party seeking custody shall not give rise to a presumption of parental fitness or cause a presumption in favor or against the award of custody to such party; provided, that in the case of a child of tender years, the gender of the parent may be considered by the court as a factor in determining custody after an examination of the fitness of each party seeking custody.

* * *

---

[1]The 1997 amendments to T.C.A. § 36-6-101 are not applicable to this case, as they were enacted after the date of the trial below.

T.C.A. § 36-6-106

> In a suit for...divorce,...or in any other
> proceeding requiring the court to make a
> custody determination regarding a minor
> child, such determination shall be made upon
> the basis of the best interest of the child.
> The court shall consider all relevant factors
> including the following where applicable:
>
> (1) The love, affection and emotional ties
> existing between the parents and child;
> (2) The disposition of the parents to provide
> the child with food, clothing, medical care,
> education and other necessary care and the
> degree to which a parent has been the primary
> caregiver;
> (3) The importance of continuity in the
> child's life and the length of time the child
> has lived in a stable, satisfactory
> environment;
> (4) The stability of the family unit of the
> parents;
> (5) The mental and physical health of the
> parents;
> (6) The home, school and community record of
> the child;
> (7) The reasonable preference of the child if
> twelve (12) years of age or older. The court
> may hear the preference of a younger child
> upon request. The preferences of older
> children should normally be given greater
> weight than those of younger children;
> (8) Evidence of physical or emotional abuse
> to the child, to the other parent or to any
> other person; and
> (9) The character and behavior of any other
> person who resides in or frequents the home
> of a parent and such person's interactions
> with the child.

The paramount consideration in all custody determinations is the best interest of the child or children. *Id.* *See also* **Bah v. Bah**, 668 S.W.2d 663, 665 (Tenn.App. 1983). A trial court has broad discretion in making custody and visitation decrees. **Gaskill v. Gaskill**, 936 S.W.2d 626, 631 (Tenn.App. 1996).

A trial court also has broad discretion in determining whether and to what extent an award of alimony is appropriate. *See* T.C.A. § 36-5-101(a)(1). *See also* **Loyd v. Loyd**, 860 S.W.2d 409, 412 (Tenn.App. 1993). In making an alimony determination, a court should be guided by T.C.A. § 36-5-101, particularly the provisions of T.C.A. § 36-5-101(d)(1). An award of attorney's fees is an award in the nature of alimony. **Wallace v. Wallace**, 733 S.W.2d 102, 110 (Tenn.App. 1987); **Dover v. Dover**, 821 S.W.2d 593, 595 (Tenn.App. 1991).

Generally speaking, neither a custody nor an alimony determination will be reversed on appeal unless the record reflects that the trial court has abused its discretion. **Marmino v. Marmino**, 238 S.W.2d 105, 107 (Tenn.App. 1950).

IV. *Analysis*

A. *Joint Custody*

Wife argues that the trial court erred in awarding joint custody. She contends that the award is inappropriate for a number of reasons: neither party asked for joint custody; the parties did not agree to joint custody; the parties, because of the animosity between them, cannot be expected to work together as is required in a joint custody arrangement; appellate court decisions of this state have generally disfavored awards of joint custody in contested cases; Wife was the primary caregiver; and, finally, that the trial court "abused its discretion in fashioning a custody and visitation order to punish...Mother for riding her bicycle."

10

T.C.A. § 36-6-101(a)(1) clearly and unequivocally empowers a court to award joint custody if "the welfare and interest of the child or children [so] demand." *Id*. Contrary to Wife's argument, this power is not limited to those situations where the parties agree on joint custody. Such an agreement is important in that it gives rise to a statutory presumption that joint custody is in the best interest of the children -- a presumption that can then only be overcome by "clear and convincing evidence." *Id*. In the absence of such an agreement, and even in those cases where neither party asks for joint custody, a court has the "*widest discretion* to order a custody arrangement that is in the best interest of the child," with no "preference [or] presumption for or against joint legal custody, joint physical custody or sole custody." T.C.A. § 36-6-101(a)(2). (Emphasis added.)

It is true that this court has expressed reservations regarding joint custody, *see **Dodd v. Dodd***, 737 S.W.2d 286, 289-90 (Tenn.App. 1987); and ***Malone v. Malone***, 842 S.W.2d 621, 623 (Tenn.App. 1992); however, the holdings in those cases do not amount, as a matter of law, to a blanket denunciation of joint custody arrangements. Such a position would be at odds with the clear language of T.C.A. § 36-6-101(a). In the **Dodd** and **Malone** cases, the court held that, *under the facts of those cases*, the evidence preponderated against a finding that joint custody was in the best interest of the subject children. Wife reads **Dodd** and **Malone** too broadly. It should also be noted that T.C.A. § 36-6-101(a) has been amended since those two decisions to more

11

clearly delineate the power of a trial court to grant joint custody if the evidence warrants such an arrangement.

As to Wife's other arguments regarding the trial court's joint custody determination, they all address the real issue before us on this subject: Does the evidence preponderate against an award of joint custody? We find that it does not.

The only professional who testified in this case was John Kandilakis, a clinical psychologist who holds a doctorate in clinical psychology. Dr. Kandilakis saw the parties and their children pursuant to an agreed order referring them for a custody evaluation. Dr. Kandilakis was called[2] as a witness on behalf of Wife.

Dr. Kandilakis made the following recommendations:

> ...essentially, I felt that both parents were committed and emotionally capable of being involved in an active way with their children, so I recommended joint custody. And by that I meant that they could participate in the important decisions involving their children's lives that related to education, their religious participation and their health and medical needs, things like that.
>
> Q. Doctor, recognizing that even with the joint custody decree that the children under Tennessee law are not split fifty/fifty --
>
> A. Right.
>
> Q. -- as far as their time, did you reach a conclusion as to which of the two parents should be designated as the primary residential custodian?

---

[2]He testified by deposition.

12

> A. Yes. I recommended that during the
> school year that they remain with the mother,
> the mother's place of residence, with ample
> time for the father to also see the children.
> Now, that has to be worked out I think in
> terms of the particulars, but I felt that
> they should continue to have the mother's
> home as the primary place of residence, at
> least during the school year. During the
> summer, I felt they could alternate, you
> know, from, you know, maybe split one week
> with the father, one week with the mother.

The witness expressed some reservations as to whether the parties would cooperate with respect to their joint custody responsibilities, but thought that a joint custody arrangement should be given an opportunity to work. He generally found both parents to be fit custodians, but acknowledged that Wife appeared to have been the primary caregiver.

On the subject of joint custody, the trial court also had before it the parties' marital dissolution agreement of February 28, 1997, in which they had agreed on joint custody. It is true that Husband refused to be bound by the written agreement of February 28, 1997. He did so with the comment, "I believe everybody has an opportunity to change their mind." He gave no other explanation and certainly did not indicate that his signature was obtained by fraud or legal duress. While the parties were not bound by the disavowed marital dissolution agreement, *see* **Harbour v. Brown for Ulrich**, 732 S.W.2d 598, 599 (Tenn. 1987), the trial court could certainly consider it as *evidence* of what is the appropriate custody decree in this case. Can it be seriously argued that what the parties thought was in their children's best interest as of February 28, 1997, is not

13

*some evidence* of the appropriate custodial arrangement as of March 17, 1997, the date of the hearing?  We think not.

When the evidence is considered *in toto*, we cannot say that it preponderates against joint custody in this case.  While it does appear that Wife was the primary caregiver, this is only one of the factors set forth in T.C.A. § 36-6-106.  We share Dr. Kandalakis' misgivings as to whether the parties can or, more importantly, will work together for the benefit of their children; however, their animosity in this case is not so severe as to absolutely militate against joint custody.  Hopefully, the parties will put aside their personal differences in the *past* in order to make decisions that are in the best interest of their children in the *future*.  As an outside entity, we can only hope so.

While it is obvious that the trial court was concerned about the effect of Wife's bicycle riding hobby on the children -- and we will discuss this further later in this opinion -- we can find no convincing evidence that this concern motivated the court to award joint custody in this case.  We suspect that Dr. Kandalakis' testimony was the main motivating factor.

B.  *Alimony*

While alimony, including attorney's fees, was clearly an issue made out in the pleadings, the parties chose to spend very little time at trial on this subject.  As previously indicated, the main focus in this case was on custody and, to a much lesser extent, grounds for divorce.  The parties spent very

14

little time on alimony-related evidence and, as earlier indicated, almost no time on the division of their property. Wife presented an affidavit of income and expenses reflecting a monthly net income of $1,158.42 and anticipated expenses of $2,145. Her counsel asked her no questions regarding any of the 18 expense items reflected on the affidavit. Examination by opposing counsel and the court only focused on her monthly gross income, which apparently fails to reflect a recent pay raise.

Husband also presented an affidavit touching on his income and expenses. Excluding an anticipated child support expense of $935, his expenses are reflected as being $2,408.16; but this figure includes an expense item of $700 that Husband admitted he is not currently paying. His affidavit reflects a monthly net income of $2,378.05. Other than the questionable $700 item, none of the expense items shown on his affidavit were inquired into by either counsel.

Wife testified that she had paid her attorney a fee of $7,500 and court reporters' charges of $50.

We cannot say, from the meager evidence before us, that the evidence preponderates against the trial court's determination that Wife was not entitled to alimony, including attorney's fees. Wife is employed; her income, without her recent pay raise, but coupled with Husband's child support payment of $1,000 per month, gives her a monthly net income of approximately $2,158.42. Husband is left with $1,378.05 in income to pay his essentially unchallenged expenses of $1,808.16.

15

Wife testified that she wanted to open a day care center, but gave no details.  The trial court was impressed by the fact that Wife has a degree in elementary education and hence the ability to earn more than she is currently earning.  She presently drives a bus for, and teaches in, a headstart program in Knox County, during nine months of the year.  She does not work in the summer.

When the provisions of T.C.A. § 36-5-101(d)(1), especially the factors set forth at (A) through (L), are considered in this case, we cannot say that the evidence preponderates against the trial court's denial of rehabilitative alimony for Wife.  The trial court heard and saw the witnesses.  It was in the best position to judge the credibility of the parties when they gave testimony relating to the various alimony factors.

In view of the fact Wife received $20,000 from the property settlement, and an undisclosed distribution of assets from the remainder of the division of property,[3] we find that the evidence does not preponderate against the trial court's decision that Husband should not be obligated to pay Wife's fees.  On the meager record before us, that decision can be justified by Wife's lack of need, Husband's inability to pay, or both.

The issues of rehabilitative alimony and attorney's fees are found adverse to Wife.

C.  *Co-parenting Time and Child Support*

---

[3]The decree of divorce simply provides that each party will receive the property in his/her possession, as earlier divided by them.

16

As previously indicated, the trial court awarded Husband primary custody of the children "from the second Monday in June of each year until the third Sunday in August of each year." Because of this, the court decreed that Husband's child support obligation would decrease to $250 in the summer months. He awarded co-parenting time as follows:

> CO-PARENTING VISITATION: Co-Parenting Visitation shall be as follows
>
> WEEKENDS: The Father shall have co-parenting time with the parties' minor children during the school year on weekends from Friday at 6:00 p.m. until Sunday at 6:00 p.m., for five weekends out of every eight; he is to present a schedule to the Mother at least fourteen days prior to the exercise of any co-parenting visitation period.
>
> SUMMER WEEKENDS: During the months of June, July and August, the Mother shall have co-parenting visitation with the parties' minor children each weekend during said summer months, except for two weekends which shall be reserved to the Father for his vacation period. The Mother shall also have an additional vacation period of one full 7-day week for a vacation time. Each party will provide to the other at least thirty day notice of the time they desire for their week long vacation periods.

Husband contends that his increased time with the children dictates that he should pay less child support. He relies upon the Supreme Court decision of *Jones v. Jones*, 930 S.W.2d 541 (Tenn. 1996), and the unreported decision of this court in the case of *Casteel v. Casteel*, 1997 WL 414401 (Tenn.App., July 24, 1997), *application for permission to appeal pending*. Both parties complain about their co-parenting times. Wife seeks reversal of the trial court's co-parenting scheme, while Husband

17

urges us to maintain his five-out-of-eight-weekends entitlement, but suggests that the children should reside primarily with him during the school year.

Husband was given visitation with his children five out of every eight weekends during the school year despite his testimony that he has to work on some weekend days. On the other hand, Wife's time with the children on weekends during the school year is limited to three out of every eight weekends even though she testified that she does not work any weekend days.

Husband was given residential custody of the children during the summer months even though he testified that he plans to be off from work in the summer for only three weeks. On the other hand, Wife's time with the children in the summer under the court's judgment will be limited despite the fact she does not work during the summer months.

Weekends during the school year and the summer period, will be important times for the parent-child relationship in this case because the children are not in school during these periods. This is in contrast to the Monday – Friday time frame during the school year when the bulk of the children's time is devoted to their schooling. While Wife is the residential custodian of the children during this time, her involvement with them is limited by their school schedule and her work schedule. The court's decrees regarding weekend and summer visitation, while appearing to be fair, actually give Husband a disproportionate share of the children's *free time*.

18

We find that the evidence preponderates against the trial court's decision on co-parenting times and the physical custody of the children in the summer. We vacate so much of paragraph 4 of the decree of divorce as provides that the primary custody and primary residence of the children shall be as follows:

> ...with the primary custody and primary residence during the school year being with the Mother; the Father shall have the primary custody and primary residence from the second Monday in June of each year until the third Sunday in August of each year.

In lieu of the vacated portion of the decree, we find and hold that the primary custody and primary residence of the children shall be with Wife throughout the year. We hasten to add that our decision should not be read as a blanket condemnation of splitting custody between the school year and the summer months. In some cases it may well be the appropriate judgment; we simply hold that it is not appropriate in this case.

In addition, we vacate that portion of the trial court's decree regarding co-parenting visitation, weekends, and summer weekends as earlier quoted in this opinion. In lieu of the vacated portion, we substitute the following provision from the parties' marital dissolution agreement:

> CO-PARENTING: The Father shall have reasonable and liberal co-parenting visitation privileges with the parties' minor children at such times to include, but shall not be limited to, the following schedule:

19

WEEKENDS: The Father shall have co-parenting time with the parties' minor children on alternating weekends, beginning on Friday at 7:00 p.m. until Sunday at 7:00 p.m.  Whenever school is in session (in the district where the minor children reside) then the Father shall pick up the parties' minor children directly from school (at dismissal) on Fridays, and shall ensure the children's return to school (on time) on the following Monday (or Tuesday, if the Monday is a school holiday).  Beginning on September 1, 1997, then the Father shall be allowed to keep the children until school begins on Tuesday (while ensuring that they go to school on Mondays).

WEEKDAYS: the Father shall have co-parenting time with the parties' minor children on alternate Wednesdays from 6:00 p.m. to 9:00 p.m.

\* \* \*

SUMMERS: The Father shall have co-parenting time with the parties' minor children for a period of six weeks each summer, to be taken in two three-week segments, with the Mother having the parties' minor children during the period between the two three-week segments for a period of at least 14 consecutive days. The Father shall notify the Mother by the first day of May of each year as to the time during which he wishes to exercise his summer co-parenting time.

Again, we recognize that the parties are not bound by the marital dissolution agreement; however, we believe that the above provisions are in the best interest of the children and more in keeping with the work and school schedules of the parties and their children.

On the subject of the Wife's bicycle hobby, we find that the evidence preponderates against the trial court's finding and holding on this subject, as expressed in the divorce decree. The oldest child testified that his mother had never left the

20

children alone to go bike riding. Certainly, there was no evidence that the children had been adversely affected by this wholesome activity. It is true that a neighbor testified that, on numerous occasions, she saw Wife leave with her bicycle strapped to her car and that she did not return until after midnight. It was the witness' opinion that she had left the children "home alone" on these occasions in order to pursue her bicycle hobby. This testimony flies in the face of the son's testimony and is contrary to Wife's testimony. Even acknowledging the trial court's favored position with respect to credibility, we cannot ignore the son's testimony. He had absolutely no incentive to lie; in fact, he testified that he loved both of his parents and expressed no preference as to the parent with whom he lived. Accordingly, we hereby vacate so much of the divorce decree as provides as follows:

> Provided the Mother refrains from so many bicycle trips and membership in the bike club, then she is the best person to have primary physical custody of the parties' minor children during the school year. The Court specifically finds that because it is going to be necessary for the mother to work full time and to also care for the children, that she would not have the time she has been devoting in the past to her bicycle hobby, and still be a good mother; failing this, then the Court most likely would look favorably upon making a change.

In view of our holding on primary custody in the summer, we vacate so much of the trial court's decree as reduces Husband's child support obligation in the months of June through August to $250. Husband will pay child support of $1,000 per month, January through December.

21

Except as modified by this opinion, the decree of divorce is affirmed.  This case is remanded to the trial court for the entry of an order memorializing the changes set forth herein.  Costs on appeal are taxed half to each party.


_____
Charles D. Susano, Jr., J.

CONCUR:


_____
Herschel P. Franks, J.


_____
Don T. McMurray, J.