TENNESSEE VALLEY KAOLIN CORPO-
RATION, a corporation organized and
existing under the laws of the State of
Louisiana

and

D. H. Whittington, a resident citizen of
Natchitoches, Louisiana

v.

Joe P. PERRY et al.,
Appellants-Appellees,

and

H. C. Spinks Clay Co.,
Appellees-Appellants.

Court of Appeals of Tennessee,
Western Section.

Dec. 5, 1974.

Rehearing Denied Jan. 31, 1975.

Certiorari Denied by Supreme Court
Aug. 11, 1975.

W. H. Lassiter, Huntingdon, Thomas R.
Prewitt, Memphis, for appellants-appellees.

George C. Thomas, Dresden, for appel-
lees-appellants.

NEARN, Judge.

On June 25, 1953, J. C. Kirby and Ollie
Kirby, owners of a tract of land located in

the 7th Civil District of Carroll County, granted a 30 year clay and mineral lease on their land to H. C. Spinks Clay Company, Inc. (hereinafter Spinks). The lease was recorded in the Register's Office of Carroll County and under the terms of the lease Spinks agreed to pay 15 cents per ton for all clay or minerals sold and shipped from said tract of land with a guaranteed minimum annual payment of $10 for the first year, $25 for the second year, and $50 for each year thereafter.

On April 3, 1957, J. C. Kirby and Ollie Kirby conveyed said tract of land to J. P. Perry for the sum of $1,000, such sale being subject to the aforesaid mentioned lease to Spinks. On April 5, 1957, J. P. Perry conveyed a one-half undivided interest in said property to R. L. Roland and W. D. Roland, Jr. in consideration of $1,000.

On March 20, 1963, J. P. Perry, R. L. Roland, and W. D. Roland, Jr. entered into a lease agreement with D. H. Whittington, President of Tennessee Valley Kaolin Corporation, granting Whittington a 30 year mineral lease in this same tract of land. Under the terms of this lease, Whittington was to pay the lessors 50 cents per ton for all clay and minerals sold or removed with a guaranteed minimum annual royalty of $25,000 to keep the lease in effect. In addition, a bonus of $5,000 was paid to the lessors.

On March 8, 1964, D. H. Whittington received written notice from Spinks that said tract of land was subject to the recorded mineral lease in favor of Spinks Clay Company. Out of court attempts to solve this problem of the alleged two leases on the same tract of land were unsuccessful. D. H. Whittington individually, and as President of Tennessee Valley Kaolin Corporation, filed a suit in Chancery Court against Joe P. Perry, Alzemme Perry, R. L. Roland, W. D. Roland, Jr. and H. C. Spinks Clay Company. The bill prayed that the lease agreement between Kirby and Spinks be declared void and forfeited because of Spinks' failure to pay the minimum annual rental; or in the alternative, that the lease

between Whittington and the lessors, Perrys and Rolands, be declared void and that Whittington be permitted to recover sums expended in reliance on the lease. The defendants, Perrys and Rolands filed an answer and a cross-bill praying the lease with Whittington be declared void because of non-payment by Whittington and that the Kirby-Spinks lease be declared a cloud on their title and be removed as Spinks, because of a failure to mine the minerals and pay annual rental payments, had forfeited all rights under that lease.

Spinks filed demurrers to the original bill and the cross-bill, both of which were overruled by the Chancellor. A discretionary appeal was prayed and granted to the Supreme Court from the order overruling the demurrer. The Supreme Court upheld the Chancellor and remanded for further proceedings. Spinks filed an answer alleging the validity of their lease and the non-validity of the Whittington lease.

During the pendency of the trial, R. L. Roland died and his next of kin were substituted as party defendants and cross-complainants.

Before a final decree was entered on the hearing on remand, Whittington-Kaolin and the Perrys-Rolands settled their differences. Whittington-Kaolin were dismissed with the Perrys-Rolands reserving all rights against Spinks on their cross-complaint.

The final decree was in favor of Spinks. The Perrys-Rolands have appealed from the adverse decision and Spinks has appealed from a portion of the Chancellor's findings. The posture of the matter on appeal now being as if the original suit had been between the Perrys-Rolands and Spinks with the Perrys-Rolands seeking a forfeiture of the Spinks lease and Spinks seeking a declaration of validity.

The controlling facts found by the Chancellor were that Spinks had failed to pay the minimum annual payments for the years 1957, 1958, 1959, and 1960 as specified in the lease; but that the lessor had also

failed to give the notice of non-payment as required by the lease to effect a forfeiture. The Chancellor then held there had been no forfeiture of the Spinks lease and same was a valid subsisting agreement.

The pertinent portion of the lease is as follows:

"It is agreed and understood by and between the parties that if Spinks shall fail to pay for clay or minerals shipped, or fail to pay the guaranteed minimum annual payments, within sixty days after same shall have become due, and, provided written demand therefor shall have been made by First Party not later than thirty (30) days after same shall have become due, then the First Party may terminate this grant and it is further agreed and understood that the failure of Spinks to prosecute mining operations shall cause a forfeiture unless Spinks shall pay the minimum annual payments . . ."

The Chancellor interpreted this portion of the lease as requiring notice of default by the lessor (First Party) before any forfeiture for non-payment could be declared.

Defendants Perrys-Rolands assign as error the finding by the Chancellor that the Spinks lease had not been forfeited. Defendants argue that Spinks had an implied or express duty to mine the property; that the Chancellor's interpretation of the contract provision was not correct; and that the provision in the contract requiring notice is unconscionable.

Spinks assigns as error the Chancellor's finding that the annual payment checks had not been properly mailed to and received by defendants Perrys-Rolands.

We will first consider the appeal of Spinks.

 It is the Spinks argument on appeal that the evidence preponderates against the Chancellor's finding that the checks for the minimum annual payments were not received by the lessor for the years 1957, 1958, 1959, and 1960. An issue such as the one presented by its nature, is largely dependent upon the credibility of the witnesses. Spinks maintained it mailed the checks and the lessor denied receipt of them. There is some confusion in the record created by Spinks as to whether the checks in question might have been mailed to the wrong address. A Chancellor, on an issue which hinges on witness credibility, will not be reversed unless, other than the oral testimony of the witnesses, there is found in the record clear, concrete and convincing evidence to the contrary. *State v. Town of Madisonville* (1968) 222 Tenn. 272, 435 S.W.2d 803; *Hall v. Britton* (1953 W.S.) 41 Tenn.App. 72, 292 S.W.2d 524. We find no such other evidence of that category and the Assignment of Error is overruled.

Now we turn to the Perrys-Rolands appeal.

There is proof that in 1953 at the time Spinks executed the lease, there was little or no market for the type of clay (the mineral sought to be mined) found on lessor's land. The proof further indicates that Spinks has expended monies in an effort to produce a market for the clay, but as of the time of suit Spinks had mined no clay. The record further reflects that recently a market has developed for this type of clay.

It is the argument of these appellants that the lease created an express and/or implied covenant to mine clay.

Further, the lease requirement of notice of non-payment only applied when a forfeiture or cancellation was predicated upon a non-payment alone; but when the forfeiture was predicated upon a failure to mine coupled with a non-payment, no notice was required.

We are of the opinion that the lease in question contains neither an implied nor an express covenant to mine. In reaching this conclusion we, as did the Chancellor, rely upon the case of *Pickens v. Kizer* (1930 E.S.) 11 Tenn.App. 551. In the *Pickens* case the mineral to be mined was marble instead of clay. The minimum annual rental provided in the lease was $360 instead of $50.

The lease in the *Pickens* case, as in this case, provided for a 30 day period for notice of non-payment which, as in this case, was admittedly not given. The argument made to the Pickens Court was that the lease was forfeited independent of notice requirements because there had been a failure to mine the stone.

The Court held, that if there was a duty to mine, then the lessee was in default in not making the monthly tonnage payments provided in the lease. It would then follow that notice of non-payment would be required under the lease and such notice was not given. Further, it was held that where a lease denies a forfeiture so long as the minimum periodic payment is paid, there can be no implied covenant to mine, as such written covenant is an express negation of any such implied covenant so long as there was sufficient consideration given for the agreement.

■ It is argued to this Court that the $50 annual payment is not sufficient consideration for the lease obtained and it is called to our attention that in the *Pickens* case, supra, the annual payment was $360. We will disregard the evident disparity between the value of clay and marble and will consider the question on the basis of land value at the time the lease was executed. In the present case the amount paid for the fee was $1,000. In the light of that cost factor, we deem an annual minimum payment of $50 to be a sufficient consideration.

■ A reading of the Tennessee cases leaves no doubt that this state recognizes an implied obligation to mine premises for minerals. See *Weatherly v. American Agricultural Chemical Co.* (1933 M.S.) 16 Tenn. App. 613, 65 S.W.2d 592, 598; *Mining and Manufacturing Co. v. Chemical Co.* (1911) 126 Tenn. 18, 24, 38, 150 S.W. 1143; Annotation 76 A.L.R.2d 721; and *Corbin on Con-*

tracts § 541. However, such an implied duty to mine can be and is waived by the lessor "where the lessee has paid or agreed to pay a specific sum of money in lieu of recurring royalties and the money has been accepted by the lessor". *Frierson v. International Agricultural Corporation* (1940 M.S.) 24 Tenn.App. 616, 633, 148 S.W.2d 27, 37; and *Weatherly.* We understand the law to be that the implied obligation to mine arises where that obligation is the sole or substantial consideration for the granting of the lease. Whether the obligation to mine is implied and then waived or whether the minimum annual payments are considered as agreed to liquidated damages for an ongoing contract is merely a play on words. The key question as heretofore answered is whether or not the minimum annual payment is sufficient consideration to hold open the lease.[1]

An additional reason not heretofore mentioned by us influenced the Court in *Frierson*, supra, which was also a case dealing with a mineral lease. In *Frierson*, at page 634, 148 S.W.2d at page 38, the Court stated, "that courts of equity should construe contracts so as to uphold them and prevent forfeiture, is a trite observation but it is one that cannot be too often repeated. It has been borne in mind throughout our consideration of this case."

For the reasons stated, we overrule the Perrys-Rolands Assignments of Error and affirm the decree below at cost of appellants and surety.

CARNEY, P. J., and MATHERNE, J., concur.

## OPINION ON PETITION TO REHEAR

NEARN, Judge.

A petition to rehear has been filed complaining of the Court's failure to consider

---

1. In so far as an implied covenant to mine or drill is concerned, Tennessee views oil and gas leases in a different light than those for solid minerals. See T.C.A. § 64–704. The reason being as set forth in the *Pickens* case, supra, i. e., "the failure to explore for oil may result in the loss of the oil by drainage from adjoining lands, while here the marble can never be disturbed." There certainly is no drainage of solid ore or minerals.

the argument of counsel regarding the alleged unconscionability of the notice provisions of the lease agreement.

We did not directly comment on that point in our former Opinion. However, we did consider it and we thought adequately treated it when we referred to the case of *Pickens v. Kizer* (1930 E.S.) 11 Tenn.App. 551, as the prime authority for overruling the Assignments of Error.

The notice provisions contained in the lease in the *Pickens* case, supra, are strikingly similar to those contained in the lease under consideration. The Pickens Court did not find such notice provision unconscionable and this Court did not find the notice provisions in the instant case unconscionable.

We simply are unable to follow the argument propounded on appeal and in this petition that the notice provision is burdensome and unconscionable because it "requires the lessors to anticipate failure of payments by the lessee . . . [and] because the lessor could never terminate the lease for non-payment of the minimum annual payments unless within the first 30 days after the payments became due the lessors anticipated that the payment would not be made before the 60 day period ended."

All that is required of the lessors under the notice provision is that they give written notice of default within 30 days thereof. Then, if the lessee does not rectify the default within 60 days from that default, the lessor has the right to terminate.

We stand on our Opinion of date December 5, 1974, and the petition to rehear is denied at petitioner's cost.

CARNEY, P. J., and MATHERNE, J., concur.