IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 2000 Session

## TANYA R. (WENGER) KIBBY v. JASON M. KIBBY

**Appeal from the Circuit Court for Sequatchie County**
**No. 6790      Buddy D. Perry, Judge**

---

**No. M1999-00906-COA-R3-CV - Filed August 31, 2000**

---

This appeal presents a dispute of custody, visitation, and attorney fees. The parties are parents of one child, Ian Kibby, who is the subject of this dispute. The father was awarded primary custody when the parties divorced in May of 1996. The mother filed a Petition for Contempt and Modification seeking primary residential placement of Ian and later requested that the court refer this matter to mediation. The father filed a counter-petition requesting a change in the mother's visitation privileges and attorney's fees. The trial court dismissed the mother's petition but granted the father's petition reducing the mother's visitation rights. The court also refused to refer this matter to mediation and did not award attorney fees to the father. The mother now appeals the court's dismissal of her petition, failure to refer the matter to mediation, and change in visitation; the father also appeals the failure of the trial court to award attorney fees to him. We agree with the trial court on all issues and affirm its ruling. We also award attorney's fees necessitated by this appeal to the father and remand to the trial court for a determination of this amount.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., and PATRICIA J. COTTRELL, J., joined.

Mitchell A. Byrd, Chattanooga, Tennessee, for the appellant, Tanya R. (Wenger) Kibby.

M. Keith Davis, Dunlap, Tennessee, for the appellee, Jason M. Kibby.

### OPINION

### I. FACTS

Tanya R. Kibby ("the mother") and Jason M. Kibby ("the father") were divorced on 6 May 1996 in Walker County, Georgia. Their only child, Ian Kibby, was born on 1 February 1995. The Georgia court awarded primary custody of Ian to the father, granting the mother standard visitation

privileges. Three months following the final divorce decree, in July of 1996, the mother filed a Complaint for Modification in Sequatchie County, Tennessee seeking primary custody of Ian. As a result of this complaint, the parties entered into an agreed order on 4 June 1997. This order provided that primary custody would remain with the father; however, the mother's visitation was increased from a standard visitation schedule to a schedule which included visitation every other week from Wednesday to Sunday and additional summer visitation.

Four months following entry of the agreed order, the mother filed a Petition for Contempt and Modification, which is at issue here. She, once again, sought primary residential placement of the child. The court held a hearing on the Petition for Modification on 10 July 1998, but reserved its ruling until October of 1999 so that all parties could undergo a custodial evaluation. On July 1, 1999, almost a year after the hearing in the case, the mother filed a motion to refer parties to mediation.

At the hearing, the mother testified that she and the father were having problems with the visitation schedule and she had lost visitation as a result. She also alleged that the father had made harassing phone calls and sent her harassing letters. In addition, there was testimony of cigarette burns on Ian. The mother alleged that these burns were made by the father, and she placed a medical record in evidence which stated that Ian told a doctor that his father burned him with a cigarette. She also claimed that the Department of Human Services was called regarding the burn; however, there was no record of an investigation of this incident.

On cross-examination the mother admitted that she was actually denied no visitation, the weekends had just become confused. She also admitted that she did not attempt to contact the father to straighten out any misunderstanding regarding visitation since "phone calls do not go very well." There was no evidence that the father's phone calls were harassing, and the only letter placed in the record was a letter from the father attempting to explain the father and stepmother's attempts to potty-train Ian and requesting the mother's assistance regarding the pattern set by the father in the potty training process.

The father testified that he had remarried and had another child by his new wife. In addition, there were two other children living in the household, these children being from his wife's first marriage. The father and stepmother both worked, so Ian and his younger sister were both placed in day care during the week days he was in his father's custody.

The father further testified regarding two alleged burns on Ian's face. The first burn apparently occurred some time in December of 1997. When the father obtained custody of Ian following the mother's visitation, he noticed a small round burn mark on Ian's chin. The father contacted the emergency room and was informed that, as this was not an emergency, they would not have time to see Ian. Therefore, the father took Ian to the police station to file a police report and have pictures taken of the mark. This picture and the police report were placed in evidence.

The following day, the father took Ian to a prescheduled appointment with a psychologist for developmental testing. The psychologist also noticed the burn mark on Ian's chin, identified it as a possible cigarette burn and talked with the child regarding how he received the burn. The psychologist, Gail Carson Webb, testified on the witness stand that Ian told her he received the burn from the mother's husband, David Lawson, and that Ian showed a great amount of hostility toward Mr. Lawson. The psychologist further testified that the burn looked relatively fresh, only a few days old, and that she was obligated to contact the Department of Human Services regarding this matter. The father and Ian's daycare worker both testified that Ian had no mark on his chin prior to being taken to his mother for visitation. The mark was only noticed upon Ian's return. In addition, the mother did not report the burn or seek treatment for Ian while he was in her custody.

Regarding a second mark, which the mother alleges Ian had on his chin in May of 1998, the father testified that he never saw this mark and has no actual knowledge of the mark or how Ian received it. (It was during this time that the mother did not return Ian to his father at the appropriate time, but took Ian camping at a location unknown to his father for several days. The father had no idea where Ian was and required court assistance to have him returned.) The mother and her husband both testified to seeing the mark and that it looked like a cigarette burn similar to the December burn. In addition, medical records reflected that Ian was seen by a doctor for the mark on his chin and that he told the doctor his father burned him. There was further testimony regarding these two burns from the father's landlord, Sandra Ramsey. Ms. Ramsey testified that she overheard Ian telling his daycare worker that David Lawson, the mother's husband, gave him the burns.

Additional testimony in the record reflects that the father tried on numerous occasions to communicate with the mother to clear up various problems with visitation or make slight changes in visitation when there was a conflict with his or his wife's schedule. The mother refused to call the father on the telephone and made little or no effort to cooperate in any visitation adjustments that needed to be made. She had even taken the child to locations unknown to the father on two occasions and made no attempt to contact the father to let him know where Ian was. She had also gone to the pick up site on several occasions, waited for Ian and filed police reports even though she just had visitation the week before and knew he would not be there. At no time did she attempt to call the father to work out any visitation discrepancies.

In addition to the psychologist Ian saw for testing at the recommendation of his father, all parties were also seen by a psychologist at the request of the judge for a court ordered custodial evaluation. The psychologist, David A. Solovey, examined both households including all children in the father's household and both current spouses. He recommended that primary residential custody remain with the father and that the mother have significant visitation. He also recommended mediation and counseling for the parents and counseling for the mother to address her depression. The psychologist's recommendations did not address any of the child abuse issues.

There was also testimony from the father, Ian's stepmother, and his daycare worker that Ian suffered from personality and emotional changes following visits with his mother. Ian's father and stepmother testified that he became withdrawn and did not interact with the other children normally

following his visits. He also refused to eat the food placed in front of him, wanting candy and cokes instead. Ian's daycare worker testified that Ian was withdrawn and distant from the other children following his visits. These witnesses all testified that after a few days Ian would return to normal.

## II. ISSUES

The issues on appeal are (1) whether the trial court erred in denying the mother's motion for mediation; (2) whether the court erred in dismissing the mother's complaint requesting custody and/or modification of the June 4, 1997 court order; (3) whether the court erred in changing the mother's visitation to limit her time with the child as opposed to expanding this visitation; (4) whether the court erred in awarding primary residential placement of Ian to the father; and (5) whether the court should have awarded the father reasonable attorney fees in his matter. With regard to all of these issues, we affirm the trial court's ruling.

## III. CUSTODY AND VISITATION

The law which governs changes in custody orders is very well settled and requires a change of circumstances so that the present situation is no longer in the best interest of the child. Further, great deference is given to the trial judge regarding custody decision.

> In recognition of the importance of stability and continuity, custody and visitation decisions, once made and implemented, are res judicata upon the facts in existence or reasonably foreseeable when the decision was made.
> . . . Tenn. Code Ann. § 36-6-101(a)(1)(Supp. 1997) empowers the courts to change custody "as the exigencies of the case may require," and courts will change custody when the party seeking to change custody proves (1) that the child's circumstances have materially changed in a way that could not have been reasonably foreseen at the time of the original custody decision, and (2) that the child's best interests will be served by changing the existing custody arrangement.
> Custody decisions are factually driven and require the careful consideration of numerous factors. Since these decisions often hinge on the parties' credibility, appellate courts are reluctant to second-guess trial judges who have observed witnesses and assessed their credibility. Accordingly, we decline to disturb custody decisions unless they are based on a material error of law or the evidence preponderates against them.

*Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997) (citations omitted).

We cannot find that the evidence preponderates against the trial court's decision to leave primary custody with the father and reduce visitation of the mother.

> The findings of the trial court which are dependent upon determining the credibility of witnesses are entitled to great weight on appeal. *Town of Alamo v.*

-4-

> *Forcum-James Co.*, 205 Tenn. 478, 483, 327 S.W.2d 47, 49 (1959). The reason for this is that the trial judge alone has the opportunity to observe the manner and demeanor of the witness while testifying. Indeed, the trial judge, on an issue which hinges on witness credibility, will not be reversed unless there is found in the record concrete and convincing evidence, other than the oral testimony of the witnesses, which contradicts the trial court's findings. *Tennessee Valley Kaolin Corp. v. Perry*, 526 S.W.2d 488, 490 (Tenn. App. 1974).

*Bowman v. Bowman*, 836 S.W.2d 563, 566 (Tenn. Ct. App. 1991). The trial judge was able to witness the manner and demeanor of the witnesses and determine their truthfulness and credibility. The record contains ample evidence from the father and other witnesses to find a change of circumstances that makes the mother's previous visitation arrangement not in Ian's best interest. In addition, there is virtually no evidence to warrant a change of primary custody to the mother. As we cannot find a preponderance of the evidence against the trial court's ruling, we affirm its decision regarding custody and visitation in this matter.

## IV. MEDIATION

The mother requested a referral to mediation pursuant to Supreme Court Rule 31 and Tennessee Code Annotated section 36-6-401 (Supp. 1999). We find that, pursuant to Rule 31, this decision was within the judge's discretion, and there was no abuse of discretion on the part of the judge in denying the request for mediation. Further, section 36-6-401 does not apply to Sequatchie County, the county in which this litigation arose[1]; therefore, there is no requirement that the court follow this statute. The judge had the opportunity to hear testimony and view the parties to determine the likelihood that mediation would be successful. Based on evidence in the record, we can find no abuse of discretion on the part of the judge. Therefore, we also affirm the court's decision not to refer this matter to mediation.

## V. ATTORNEY FEES

Tennessee Code Annotated section 36-5-103(c)(Supp. 1999) governs the award of any attorney fees in proceedings regarding child custody.

> This statute provides that a spouse may recover reasonable attorney fees incurred in any action concerning the adjudication of the custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing before whom such action or proceeding is pending, in the discretion of such court.

---

[1] In June of 2000 the Tennessee General Assembly enacted Tennessee Public Law 889 amending Title 36, Chapter 6 of the Tennessee Code. This amendment made parenting plans applicable statewide; however this amendment was not funded by the General Assembly. *See* 2000 Tenn. Pub. Acts 889.

*Stubbs v. Stubbs*, No. 02A01-9703-CH-00050, 1997 WL 730247, at * 4 (Tenn. Ct. App. Nov. 25, 1997). The trial judge, after viewing all witnesses and evidence, determined not to award attorney fees to the father. As there were allegations of child abuse and a request for modification from both parties, we find no abuse of discretion on the part of the trial judge in denying attorney's fees.

However, as in the *Stubbs* case, Appellant, the mother, instigated actions on both the trial and appellate levels. The mother filed the second request for change in custody only four and one half months after an agreed order regarding custody and visitation had been entered into by both parties and signed by the judge. She once again alleged a material change in circumstances had occurred in the four and one half months since the agreed order was entered. In addition, she stated that the father was in contempt of court for failure to abide by the restraining order, visitation schedule, and insurance. However, the proof in this matter showed her allegations to be without any foundation or merit.

She testified to two instances where she had been denied her visitation. But upon review of her cross examination and testimony of the father, it was obvious that she had not actually been denied visitation. In the first instance, the weekends for her visitation had become confused due to an extended summer visitation period. Instead of calling in an attempt to straighten this matter out with the father, the mother went to the pickup location every weekend. She accepted her visitation on the incorrect weekend, then returned the following weekend, knowing the child would not be brought because she had had her visitation the week before, and filed a report at the police department stating that the father was in violation of a court order for not bringing the child on the appropriate weekend. However, the mother never attempted to discuss this problem with the father at the time of pickup nor were any phone calls ever made to straighten out the schedule. Apparently, the father was not aware for some time that the visitation schedule had gone afoul.

On the second occasion, the mother testified that she missed her Memorial Day visitation completely. However, on cross examination and direct examination of the father, it was shown that, once again, this was merely a mix up about times and was actually the mother's mistake. The father and his wife both had to work on Memorial Day and requested the mother take the child early on Sunday night rather than Monday morning to prevent problems with the father and stepmother's work schedule. The mother refused to cooperate and insisted that they follow the court order exactly. The child was brought by the stepmother at 8:00 on Monday morning per court order; however, the mother did not arrive until 9:00. At that point, the child had been taken to his father's place of employment so the stepmother could go to work The father then called and left a message on the mother's answering machine informing her of where the child was taken, but the mother never called to arrange another pick up. Both of these mix ups in visitation were caused by a combination of honest mistake and lack of communication on the part of the mother.

On one other occasion, when the father was confused about the date for picking up Ian and was not at the pick up location when the mother arrived, she took Ian to a location unknown to the father and failed to notify him for over 24 hours. The father did not determine the location of the child until the following day and had to send an officer to retrieve him due to the restraining order

against the father. The mother never attempted to contact the father to let him know where Ian was, tell him that he had missed his pick up time, or work out a suitable arrangement to return Ian to his father.

The mother was completely unsuccessful in showing any change of circumstances that might remotely justify a change in the child's primary custodial residence from the father to her. Then, after the trial, the mother, probably knowing that she had shown no evidence of change in circumstances to justify her complaint, asked for court ordered mediation. This request was denied.

After the court's final ruling, the mother filed this appeal requesting that the court of appeals order mediation and a parenting plan as well as anger management and parenting classes with a psychiatrist. She argued that these are reasonable conditions and restrictions that should have been placed on their visitation by the trial judge. She further argued that her time with Ian should have been expanded rather than limited and that the court was in error in continuing primary residential placement with the father. However, the appellant cites no evidence in the record showing a material change of circumstance such that a change in the primary custodial residence would be in the child's best interest. Appellant's appeal focuses solely on the court's failure to follow section 36-6-401 of the Code to require mediation and parenting classes. Nowhere in the appeal were facts pointing to a change in circumstances nor were facts relating to the child's bests interests discussed. Her allegations and appeal focused primarily on relationship problems between her and the father and their new families.

Just as the mother's petition to change the custody arrangement proved unsuccessful at trial due to lack of evidence, this appeal is a pure credibility challenge without merit. Thus, we grant the father attorney fees necessitated by this appeal. We further remand this matter to the trial court for a determination of the amount of attorney fees to award the father.

IV.

We affirm the trial judge on all issues. The evidence in this case did not preponderate against the trial judge's finding that custody should remain with the father and that the mother's visitation should be reduced from a more liberal visitation agreed to in the previous order to a standard visitation schedule. We also find no abuse of discretion on the part of the judge in deciding not to refer this matter to mediation and not to award attorney fees to the father. However, we find that an award of attorney fees necessitated by this appeal is just and equitable and remand this issue to the trial judge for a determination of the amount of attorney fees to award to the father, Jason M. Kibby.

_____
WILLIAM B. CAIN, JUDGE