# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
September 1, 2010 Session

## MICKEY JOE HALL v. KIMBERLIE KAE DAVENPORT HALL

**Appeal from the Chancery Court for Knox County**
**No. 152947-3     Michael W. Moyers, Chancellor**

**No. E2009-01889-COA-R3-CV - Filed October 5, 2010**

This is a post-divorce child support modification case. Kimberlie Kae Davenport Hall[1] ("Wife") filed a petition against her former husband, Mickey Joe Hall ("Husband"), seeking an increase in child support. Wife's petition, filed October 23, 2001, was followed by numerous hearings before special masters[2] over the course of several years. The masters filed reports from each of the hearings, all of which were objected to by one or both of the parties. Interspersed among the masters' hearings, the trial court addressed various matters including the issue of child support. On January 23, 2009, the trial court held a hearing at which it ruled that the Income Shares formula for calculating child support under the Child Support Guidelines ("the Guidelines") as they existed at the time of the hearing, *i.e.*, on January 23, 2009, was applicable to the calculation of support for the period from November 1, 2001, forward. The final order being appealed by Wife applied the formula and determined that Husband had overpaid his child support by $27,377.25. The court allowed Wife certain offsets which reduced the final judgment against Wife to $24,810.65. We affirm in part and vacate in part and remand for an upward modification of Husband's support due to a "hardship" imposed on Wife by the rigid application of the Income Shares formula.

**Tenn. R. App. P. 3 Appeal as of Right ; Judgment of the Chancery Court**
**Affirmed in Part and Vacated in Part; Case Remanded**

---

[1]Wife's name in the trial court was spelled "Kimberli" in most filings. The notice of appeal spelled her name "Kimberlie" as the case is styled in this court. Appellant's brief spells her name "Kimberlie Kay." From documents in the record, it appears her name is "Kimberli Kae." We are not inclined to assign a new case name. Obviously, it is of no real consequence to the outcome.

[2]There are conflicting references in the record and in the briefs to the "title" of the fact finder. Sometimes he is referred to as "referee" and sometimes he is called "master" or "special master." Because we believe the proceedings in this case were pursuant to Tenn. R. Civ. P. 53, rather than routine referrals to an appointed child support referee, we have generally used the term master instead of referee.

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, and JOHN D. MCCLARTY, JJ., joined.

J. Terry Holland, Knoxville, Tennessee, for the appellant, Kimberlie Kae Davenport Hall.

Nicholas D. Bunstine, Knoxville, Tennessee, for the appellee, Mickey Joe Hall.

**OPINION**

I.

Wife proceeded *pro se* in the divorce proceeding that led to a judgment entered September 12, 1995. The divorce was granted on stipulated grounds and the judgment incorporated the parties' marital dissolution agreement ("the MDA"). The judgment recites that the MDA "makes adequate and sufficient provision for the custody and maintenance of the parties' minor children." Under the MDA as incorporated into the divorce judgment, Wife was awarded "physical custody" of the minor children, Ashton and Aaron, subject to a fairly standard visitation schedule for Husband. The monetary arrangements vis-a-vis the children were as follows:

> Husband shall pay to Wife the sum of $200.00 (two hundred dollars) per month as and for his monthly child support obligation. Said sum, in addition to all the other provisions herein for the support of the children, equals or exceeds the child support guidelines as set by the State of Tennessee. . . . . In addition, husband will continue to purchase $100.00 (one hundred dollar) face value savings bonds (one for each child), each month until each child graduates high school or reaches their nineteenth birthday. Both parties will cooperate in attempting to have the earnings qualified as tax deductible for college use.

> Husband shall keep the minor children covered on a policy of major medical insurance. The parties shall divide any expenses not covered by said insurance such as deductible. This includes dental and orthodontic benefits as well. The minor children have life insurance policies insuring their lives. Wife shall pay twenty-five percent of each child's annual premium and husband shall be responsible for and pay seventy-five percent of each

child's annual premium till said policies are paid up in full. Husband will keep as a minimum fifty percent of all his life insurance policies presently in full force and effect naming the two minor children as beneficiaries of said policies with wife to be trustee over the funds in the event the children are minors upon husband's death.

Husband and wife agree to designate both children equally as beneficiaries for a minimum of fifty percent of all their IRA and 401K accounts offered through their employment until the children reach majority.

* * *

Each party will be responsible for one-half of all clothing, shoes, and extracurricular activities, such as lessons and sports.

(Paragraph numbering in original omitted.)

Wife's petition filed on October 23, 2001, was filed in Blount County where the divorce was granted. Because the parties had moved to Knox County, the case was transferred to the trial court before any proceedings were held. The petition alleges "a material and substantial change of circumstances since the signing of the [MDA] that justifies the modification of child support obligations of the parties." Among other changes, the petition specifically alleges a substantial increase in Husband's income greater than 15%, and asks that support be set at 32% of Husband's total income rather than the previously-agreed to payment of "one-half of all clothing, shoes, and extracurricular activities." Husband answered the petition after which the parties attended three mediation sessions aimed at resolving the issues raised in the petition.[3] The mediation resulted in an agreed order resolving all issues except child support, with an agreement to an expedited procedure for resolving the child support issue:

[3]The parties agreed at oral argument that we have all parts of the record needed for determining this case. We will proceed with this understanding and assume that anything we have not been furnished is extraneous. For example, it is clear, only from an agreed order that we have been furnished, that there were pleadings filed related to the visitation schedule, in addition to the petition to modify, that were considered by the mediator in the course of the several meetings and dealt with in an agreed order. We can glean what we need to know from the order, without knowing the jot and tittle of all the pleadings that led to the order.

That in order to obtain an expeditious[4] resolution, the issue of child support will be referred to a Substitute Referee, who will hear testimony from the parties and their witnesses, argument of counsel and determine this portion of the case pursuant to applicable law. . . . [T]he Honorable Stan C. Briggs, Referee of the Juvenile Court, will determine the child support issue and submit Findings and Recommendations to this Court for approval.

The first hearing on Wife's petition was before Child Support Referee Stanley C. Briggs. On May 30, 2003, Referee Briggs ("Master No. 1") filed his "Findings and Recommendations" which we will summarize. Many of the payments made by Husband under the MDA did not qualify as child support while others that might otherwise qualify were subject to such fluctuations as to potentially lead to disagreements. The 1995 MDA and judgment were in violation of Tenn. Code Ann. § 36-5-101(a)(2)(A) and Tenn. Comp. R. & Regs. ch. 1240-2-4-.03(4) which both require that a *definite* sum be set for child support. Therefore, Master No. 1 concluded, following the initial hearing before him, that it was incumbent upon him to calculate the amount of support that Husband should be paying under the Guidelines. Based on Husband's 1994 income of $49,689.76, his support obligation at the time of the divorce should have been set at $1,000.64 per month. Husband's 2002 income had risen to $69,336.00, and based entirely on this figure, support at the time of the hearing would have been $1,341.44. However, because of an increase in Husband's parenting time with the children, a downward deviation was in order – based upon a daily support rate of $41 multiplied by 61 days – for a monthly decrease of $224.18. The new support figure effective as of the date of filing of Wife's petition to modify was $1,117.26 per month, *i.e.*, $1,341.44 less $224.18. The difference between the monthly support required in 1995, *i.e.*, $1,000.64, and the support required in 2001, *i.e.*, $1,117.26, was $116.62, a figure less than the required "significant variance" of 15% for modifying child support. Even though a modification of support was not authorized on the basis of a significant variance, modification was permitted by the master "to provide for a definite sum of support each month." Therefore, Master No. 1 recommended that support be set at $1,000.64, retroactive to the date of filing of Wife's petition. Upon giving Husband credit for an average payment of $425.15 per month based upon the total payments made by him in the relevant time period, Master No. 1 calculated an arrearage of $9,207.36 based upon

---

[4]This reference is somewhat ironic since a petition filed in 2001 was not finally concluded in the trial court until 2009.

an underpayment of $575.46[5] per month for 16 months. Also, Master No. 1 recommended that the arrearage be paid at the rate of $100 per month.

Husband and Wife both filed timely objections to Master No. 1's recommendations. Primarily, Husband objected that there was no significant variance; therefore, there was no basis to modify the MDA. Wife, on the other hand, objected that Master No. 1 failed to find a basis for modification and also challenged his determination that the arrearage should be paid at the rate of $100, contending it was too low. She also argued that the arrearage should be paid with interest.

At some point, Wife filed a motion asking that Husband be held in contempt for not paying support in accordance with Master No. 1's recommendation. Also, it appears that Husband, in March 2006, filed a motion to change custody and reduce support. As an affirmative defense to Wife's motion for contempt, Husband averred "that the Findings and Recommendations of February 13, 2003 by the Special Master has been objected to by both parties, and said objections have not been addressed by the Court as of this date." Husband also alleged "that the parties appeared before [Master No. 1] on May 23, 2005 for supplemental Findings and Recommendations as a result of the change in the child support laws [and] [t]hat [Master No. 1] has yet to issue these supplemental Findings and Recommendations." Husband also averred that a new parenting plan had been entered increasing his parenting time with Aaron and that support should be based on the new parenting schedule. The court verbally ordered the parties to comply with Master No. 1's report until ordered otherwise.

On November 28, 2006, the trial court referred the matter to Attorney John K. Harber as special master ("Master No. 2") pursuant to Tenn. R. Civ. P. 53 for findings on specific issues. Master No. 2 held a hearing on February 8, 2007, to determine "the [Husband's] child support obligation effective 6-1-05" and "the [Husband's] child support obligation effective 10-26-06." Master No. 2 filed his report on February 20, 2007. Master No. 2 found he was unable to determine, at the time of his report, the support obligation effective October 26, 2006, because the parties had not yet filed their 2006 tax returns. Master No. 2 recommended that he reconvene as soon as both parties had filed their 2006 tax returns and address any modification of support "effective 10-26-06." As to the obligation effective June 1, 2005, Master No. 2 found "a significant variance has occurred in the Father's income and child support obligation justifying a modification of child support." Based on tax returns, Master No. 2 determined that Husband's monthly income for child support purposes was $5,295. Because Wife's 2005 income was inflated by a withdrawal from retirement funds,

---

[5]This figure appears to be a few pennies off but no complaint was made regarding the arithmetic of Master No. 1. It is *de minimus* and will not be further considered by us.

Master No. 2 averaged her 2003, 2004 and 2005 income and found that her monthly income for child support purposes should be figured at $6,856. Master No. 2 found that Aaron spent 101 days with Husband and Ashton spent 33 days with him. Husband's child support obligation effective June 1, 2005 was found to be $863 per month.

Wife objected to Master No. 2's report on numerous grounds. She made the following objections: (1) the change from $1,000.64 to a lesser number should not be effective earlier than the date of Husband's motion to reduce support; (2) that she paid a 10% tax penalty on her early withdrawal of retirement and the penalty should have been deducted from her gross income; and (3) that the report did not provide for a payment on the arrearage.

After Master No. 2 's report was filed, Husband stopped paying toward the arrearage, and Wife filed a second motion for contempt. The motion was heard May 4, 2007, and an order was entered May 25, 2007. The trial court refused to hold Husband in contempt, but required him to pay Wife's attorney's fees for prosecuting the motion for contempt. The order entered on the motion for contempt discusses at length the status of the case in regard to the reports of the special masters.

> That although there is no Order down from the previous hearing in this Court on similar issues, said hearing having been conducted on or about November 29, 2006, all parties agree and the Court recollects that the issue of the status of [Master No. 1] and his Findings were resolved for purposes of going forward with support and that the Court as a part of its ruling then specifically ordered that [Master No. 1's] Findings would be followed until modified by subsequent hearing. Further [Master No. 1's] Findings called for an arrearage amount to be paid at the rate of One Hundred Dollars ($100) a month.
>
> The Court recalls that . . . [Master No. 2] was appointed by the Court for the purpose of making certain Findings and Conclusions and indeed the Court has received findings from [Master No. 2] which were filed in mid February 2007.
>
> *   *   *
>
> From all of the foregoing it is therefore ORDERED as follows:
>
> That [Master No. 2's] ruling from February 2007, as further modified by any subsequent rulings from additional hearings

shall be the rule of this case without regard to his status as Special Referee or Special Master until such rulings shall be affirmed, modified or otherwise accepted by this Court.

* * *

That the arrearage previously found by [Master No. 1] and the payment thereon previously ordered by [Master No. 1] shall continue to be the rule of the case until same is affirmed, modified or otherwise approved by this Court.

(Paragraph numbering in original omitted.)

On July 10, 2007, Master No. 2 filed his findings and recommendations regarding Husband's child support obligations for 2006 and 2007. Based on the income of the parties and the amount of parenting time with the children, all as reflected on the worksheets in the record, Master No. 2 found Husband's support obligation to be $215 per month from March 14, 2006, to December 31, 2006, and $362 per month from January 1, 2007, forward.

Husband objected to the July 2007 report of Master No. 2 on the ground that it miscalculated his rental income and that the master should not have set the 2007 support at a higher figure without finding a significant variance in his income. Wife also filed objections to the July 2007 report.

On August 3, 2007, Husband filed a motion asking that his child support payments be suspended and that the matter be remanded to Master No. 2 in light of Wife's notification that she was relocating to Colorado with daughter Ashton and was willing to allow Aaron to reside with Husband. According to Husband, this would affect the child support obligations to the point that Wife would owe Husband support. Wife opposed the motion to suspend, primarily on the ground that their son would graduate from high school in May 2008, and therefore, any recalculation of support would be temporary. Wife also pointed out that Master No. 1 had not filed a report from the second hearing he had held.

On September 11, 2007, the court entered an order on numerous pending motions. The court granted Wife permission to relocate with her daughter, suspended ongoing child support payments, ordered Husband to continue to pay $100 per month toward the arrearage, treated Wife's objections to the July 2007 report of Master No. 2 as withdrawn, took Husband's objections under advisement, took the motion to remand to Master No. 2 under advisement, and reserved all other matters for further hearing.

In April 2008, Wife filed a motion to terminate support for Aaron in light of his impending May 2008 graduation and to recalculate support for her daughter who was residing with Wife. Wife reiterated her insistence that some ruling be made on the original report of Master No. 1 filed in May 2003, and that interest be added to the arrearage.

On May 15, 2008, Master No. 1 finally filed his findings with regard to the hearing conducted by him on May 23, 2005, a hearing held for the purpose of "reevaluat[ing] child support pursuant to the Tennessee income shares guidelines effective January 18, 2005." Master No. 1 treated the 15% significant variance requirement as not applicable. He calculated Wife's income at $5,853.33 per month and Husband's at $5,234.59 per month, including $422.50 rental income. Master No. 1 refused to allow the "paper loss" for depreciation taken on Husband's tax return. Master No. 1 summarized his findings and calculations as follows:

> The income shares guidelines indicate that [Husband's] share of the BCSO[6] of $770.33 is reduced by 20%, $154.07, due to parenting time adjustment. His support was increased by $107.44 for the special expense deviation [for extracurricular activities] to a total of $678.44 per month, which was a substantial 32% decrease from the former support. The [Husband's] income has increased from $4,140.81 monthly in 1994 to $5,234.59 per month in 2005 and it is found appropriate to employ the hardship provision to increase support to $839.54 per month.
>
> The difference between the February 13, 2003 support of $1,000.64 and $839.54 of $161.10 has accrued as a credit against the judgment of $9,207.36, assuming the [Husband] has paid per the prior recommendation. The total credit from May, 2005 through April, 2008 would be $5,799.60.

On May 26, 2008, Wife objected to Master No. 1's second report on multiple grounds, including the fact that three years had elapsed between the hearing date and date of filing of the report. On May 16, 2008, the court held a hearing on Wife's motion to terminate support for Aaron and to recalculate support for daughter Ashton. The court entered an order on September 9, 2008, *nunc pro tunc* to May 16, 2008, requiring Husband to pay $534.00 per month for Ashton.

---

[6]"BCSO" means "Basic Child Support Obligation."

On January 23, 2009, the court held a hearing upon all outstanding issues and entered an order on April 3, 2009. As pertinent, the court ordered:

> The Court finds that any modifications of child support shall utilize the existing Income Shares formula for said modification.
>
> \* \* \*
>
> Based on the court's findings of fact, [Husband's] child support obligation from November 2001 is as follows:
>
> (A) [Husband] shall pay the monthly sum of $672.00 per moth to [Wife] for the months of November, and December of 2001 . . . .
>
> (B) [Husband] shall pay the monthly sum of $792 per month to [Wife] in 2002 . . . .
>
> (C) [Husband] shall pay the monthly sum of $616 per month to [Wife] in 2003 . . . .
>
> (D) [Husband] shall pay the monthly sum of $614 per month to [Wife] in 2004 . . . .
>
> (E) [Husband] shall pay the monthly sum of $619 per month to [Wife] in 2005 . . . .
>
> (F) [Husband] shall pay the monthly sum of $215 per month to [Wife] in 2006 . . . .
>
> (G) [Husband] shall pay the monthly sum of $70 per month to [Wife] in 2007 . . . .
>
> (H) [Wife] shall pay the monthly sum of $146 per month to [Husband] in 2008 from January 1, 2008 through May 31, 2008 . . . .
>
> (I) [Husband] shall pay the monthly sum of $654 per month to [Wife] in 2008 from June 1, 2008 through December 31, 2008 . . . .

-9-

(J) [Husband] shall pay the monthly sum of $654 per month to [Wife] beginning January 2009. . . .

\* \* \*

That the parties shall attempt to determine any child support arrearages owed to either party as a result of the court's findings herein, and advise the Court of same. That, accordingly, this issue is reserved at this time.

(Paragraph numbering in original omitted.) In another order entered the same date, the court held that Wife was not entitled to reduce her income for the amount she paid in state income tax and the taxes she paid on an early withdrawal of retirement funds in 2005.

The court entered its final order on August 11, 2009, in which it found that Husband had overpaid his child support obligation by $27,377.25 through December 31,2008. The court allowed Wife an offset of $2,566.60 for overpayment of her share of extracurricular activity expenses. Accordingly, the court awarded Husband a judgment against Wife for $24,810.65.

II.

Wife appeals, raising numerous issues, all of which turn on whether the trial court erred in rigidly applying the 2006 Income Shares formula to Wife's petition to modify child support filed in October 2001. Wife stresses the obvious: that numerous hearings were held on her October 2001 petition, none of which resulted in a final judgment until 2009.

III.

The resolution of this convoluted procedural history turns on a question of law. We review a trial court's determination of law *de novo*, with no presumption of correctness. ***Vantage Technology, LLC v. Cross***, 17 S.W.3d 637, 644 (Tenn. Ct. App. 1999). Prior to the adoption of the Guidelines, trial courts were allowed broad discretion to set child support according to their view of the means and condition of the parents. ***Brooks v. Brooks***, 61 S.W.2d 654, 654 (Tenn. 1933). The adoption of the Guidelines has limited that discretion; decisions regarding support must be made within the parameters of the Guidelines. ***Berryhill v. Rhodes***, 21 S.W.3d 188, 193 (Tenn. 2000); ***Smith v. Smith***, 165 S.W.3d 279, 282 (Tenn. Ct. App. 2004). Generally, a trial court's factual findings that approve a master's factual findings are considered conclusive. ***Dalton v. Dalton***, No. W2006-00118-COA-R3-CV,

2006 WL 3804415, at *3 (Tenn. Ct. App. W.S., filed Dec. 28, 2006). However, this general rule is not followed where the finding is based on an underlying error of law or is a mixed question of fact or law. *Id*. Where the trial court makes its own factual findings which reject or modify a master's findings, we review those findings *de novo* accompanied by a presumption of correctness unless the evidence preponderates against those findings. ***Parks v. Eslinger***, No. M1999-02027-COA-R3-CV, 2003 WL 237597, at *6 (Tenn. Ct. App. M.S., filed Feb 4, 2003). Where the trial court makes no factual findings, we simply review the record *de novo* for the preponderance of the evidence, without a presumption of correctness. ***Kesterson v. Varner***, 172 S.W.3d 556, 566 (Tenn. Ct. App. 2005).

IV.

We are aware of two cases, both unpublished, which discuss whether amended versions of the Guidelines apply to petitions to modify child support made before the amendments were adopted. The cases are ***Boyd v. Bates***, No. M2007-02345-COA-R3-CV, 2008 WL 3342998 (Tenn. Ct. App. M.S., filed August 11, 2008), and ***Pruett v. Pruett***, No. E2007-00349-COA-R3-CV, 2008 WL 182236 (Tenn. Ct. App. E.S., filed Jan. 22, 2008). ***Boyd*** concerns the Income Shares formula amendment that became effective January 18, 2005,[7] and ***Pruett*** concerned the later June 2006 amendment[8]. ***Pruett*** held, in no uncertain terms, that the Guidelines as amended in 2006 apply to petitions to modify support filed

---

[7]As quoted in ***Boyd***, the 2005 version states:

> (1) Beginning on the effective date of these rules, all modifications shall be calculated under the Income Shares Guidelines, *whether the action was pending before the effective date* or filed after the effective date, *where a hearing which results in an order modifying support is held after the effective date of these rules.* Tenn. Comp. R. & Reg. 1240-2-4-.05(1) (emphasis added).

***Boyd,*** 2008 WL 3342998, at *5 (emphasis in original).

[8]As quoted in ***Pruett***, the 2006 amended versions states:

> The Child Support Guidelines established by this Chapter shall be applicable in every judicial or administrative action to establish, modify, or enforce child support, whether temporary or permanent, whether the action is filed before or after the effective date of these rules, *where a hearing which results in an order establishing, modifying or enforcing support is held after the effective date of these rules.* (emphasis added). Tenn. Comp. R. & Regs., ch. 1240-2-4-.01(2)(a) (2006).

***Pruett***, 2008 WL 182236, at *5 (emphasis in original).

before the amendment, in those cases where the hearing on the petition is held after the effective date of the amendment. ***Pruett***, 2008 WL 182236, at *5. Further, ***Pruett*** clearly holds that it is not the hearing before a referee or master that controls; it is the hearing wherein the trial court took "some affirmative action . . . 'upon the report of the master' " ***Id***. (*quoting* Tenn. R. Civ. P. 53.04(2)). In this regard, ***Pruett*** is in accord with ***Boyd's*** holding that

> the applicability of the income shares guidelines does not depend on the date on which the petition to modify is filed. Rather, it depends on the date of the hearing that results in an order modifying support.

***Boyd***, 2008 WL 3342998, at *5. Where a matter is referred to a special master, there is no "order modifying support" for the purpose of determining which version of the Guidelines applies until the court of record acts upon the report. ***Pruett***, 2008 WL 182236, at 5. Accordingly, we are constrained to hold that the trial court did not err in applying the Guidelines, as amended in 2006, to Wife's petition to modify support. Our holding that ***Pruett*** applies to the instant case disposes of Wife's argument that we should modify the holdings of ***Pruett*** and ***Boyd*** to the point of treating the pre-Income Shares version of the Guidelines as the controlling version because that is what was in effect when Master No. 1 first acted on the petition to modify. Again, the critical date is the "date of the hearing that results in an order modifying support," ***Boyd***, 2008 WL 3342998 at *5, and not the date of the hearing before the master.

As far as the facts of this case are concerned, our holding as to the correct version of the Guidelines to be applied to the calculations, however, is not the end of the matter. Wife argues strenuously that "the facts in this case are unique, unusual, and realistically should be treated substantially differently than . . . the current unreported cases . . . ." Wife argues that, under the circumstances, "application of the Income Shares Guidelines is simply inappropriate." One of her issues is phrased in terms of questioning whether the application of Income Shares "works an inequitable hardship." She also argues that "it is inappropriate to utilize Income Shares to determine and modify the child support from what was previously Ordered and followed by the parties under Court Order of some six (6) years." Similarly, Wife argues that "it cannot be said to be equitable to enforce a law . . . that actually modifies by a factor of Twenty-Five Thousand Dollars . . . the obligation of support."

Although Wife does not specifically assert in her brief that the trial court "should have applied the 'hardship provision' " in the 2006 amended version of the Guidelines to soften the blow, her arguments are tantamount to that assertion. Because the substance of the issue is addressed and the facts are argued, it is appropriate for us to decide the issue on substance

rather than form. ***Northeast Knox Utility District v. Stanfort Const***., 206 S.W.3d 454, 461 (Tenn. Ct. App. 2006). The issue of "hardship" is properly before us.

In fact, Husband asserts that Wife "failed to prove to the trial court that a significant hardship existed such that the hardship provisions available under the guidelines were applicable to this cause." We disagree with Husband. Neither the final order entered August 11, 2009, nor the order entered April 3, 2009, specifically addressed whether strict application of the Income Shares formula would impose a hardship on Wife. However, the trial court specifically observed in the hearing held January 23, 2009, that an upward deviation in child support based on hardship to Wife, as found by Master No. 1 in his second report, would be a more appropriate way to deal with the dilemma and the equities of the situation, rather than simply ignoring the change in the law. Also, the court acknowledged in the hearing held June 2, 2009, that the result it was reaching "seems inequitable." The omission of a specific finding would appear to be a matter of oversight rather than a factual finding that the hardship provision should not be applied. As we have indicated, Master No. 1, in his second report, found that a modification based on hardship was required. Master No. 1 increased Husband's support by 50% of the difference between the amount he was paying under a straight percentage calculation and the amount calculated under the Income Shares formula.

In contemplation that the application of the Income Shares formula could significantly affect the amount of child support, the amendment carried an escape clause to soften the blow to the custodial parent. The 2006 provision states:

> (h) Hardship Provisions Due to Modification of Order.
> Any time following the effective date of these Rules when a tribunal is considering modification of an order initially established under Tennessee's Flat Percentage Guidelines, and the tribunal finds a significant variance between the amount of the existing child support order and the amount of the proposed child support order calculated under this chapter, which change results from the application of the guidelines rather than from the change in the income and/or circumstances of the parties, *then the tribunal may modify the current child support order up to the full amount of the variance or may apply a hardship deviation as described below in parts 2-4.*

Tenn. Comp. R. & Regs. ch. 1240-02-04-.07(h)(2006) (emphasis added).

-13-

The phrasing of the hardship provision appears to be tailor made to the present situation. For approximately four years the parties, by order of the court of record, followed the recommendation of Master No. 1 in his first order setting Husband's ongoing support obligation at $1,000.64 under the flat percentage rate of 32%. For an interim period of time in 2007, based on an order of the court of record, Husband paid support of $839 based on Master No. 2's first report. Then, in its order entered April 4, 2009, the court modified Husband's monthly support obligation using Income Shares. The new support obligation set amounts varying from $70 per month to $792 per month. Even at the high end, there is a significant variance that is largely the result of the new formula. This is true up until January 1, 2008, when Wife began paying support to Husband based on the changes in the parties' incomes and on her relocation. At this point, changes in support were at least as much a matter of "the change in the income and/or circumstances of the parties" as was the new formula.

We therefore hold that the evidence preponderates in favor of a finding that strict application of the 2006 version of the Guidelines to Wife's petition to modify works a hardship significant enough to require the trial court to "modify the current support order" up to January 1, 2008. We also believe, and so hold, that the modification should be at least 50% of the difference between what Husband was ordered to pay under the straight percentage rate and what he was ordered to pay under Income Shares. There is no magic formula by which we have reached the percentage of 50%. It is simply the minimum amount that we believe will be necessary to alleviate the hardship on Wife based on the amount of the change and the time for which it retroactively took away support that Wife received and ostensibly spent on her children. We will leave it to the trial court on remand to determine the exact percentage rate for the time periods identified by the trial court in his last order up to January 1, 2008, so long as it is at least 50%. It will also be necessary for the trial court on remand to calculate the dollar amount of Husband's support obligation based upon the percentage determined by the court for each of the applicable time periods. From January 1, 2008, forward, the trial court's decrees will control without modification by this opinion.

Other than Wife's assertion that this matter should be remanded to the trial court to employ the straight percentage method utilized by Master No. 1 and to therefore rule on the original objections to Master No. 1's report, we do not perceive that the focus of either party is on the particular numbers as found after the numerous hearings. Therefore, we have focused more on the method than the mechanics. We have found nothing to indicate that the evidence preponderates against the income figures used by the trial court to reach its final figures. In light of the holdings we have announced, we have considered whether we should have the trial court, on remand, consider and rule on all of the objections to the first report of Master No. 1. We reject that approach for several reasons. First, it is the impact of the Income Shares formula on the previously ordered support, rather than the correctness of the previous order, that is the focus of the hardship provision. Second, we do not perceive the

substance of the objections to be significant vis-a-vis the number that would be produced based on 32% of Husband's income at the time the petition to modify was filed. It also appears that several of the objections were waived in the course of the last two hearings before the trial court. Finally, counsel for both Husband and Wife indicated at oral argument that their clients preferred to have this case brought to a close as simply and expeditiously as possible, with as little left on remand as possible.

Wife specifically asks us to address one additional issue, *i.e.*, "the issue wherein during the evidence adduced at the hearing on January 23, 2009, [Husband] was found to have lied substantially both on his income tax returns as well as to the Court." Contrary to Wife's argument, the trial court did not find that Husband had lied. Wife made the same argument to the trial court, *i.e.*, that her cross-examination exposed a lie. The trial court's response was, "I don't find that testimony terribly persuasive." The trial court is obviously in a better position than this court to determine the credibility of a witness. Therefore, we "extend considerable deference" to credibility findings by the trial court. ***Richards v. Liberty Mutual Ins. Co.***, 70 S.W.3d 729, 732 (Tenn. 2002). Courts have held that a chancellor's finding which turns on credibility will not be reversed "unless, other than the oral testimony of witnesses, there is found in the record clear, concrete and convincing evidence to the contrary." ***Tennessee Valley Kaolin Corp. v. Perry***, 526 S.W.2d 488, 490 (Tenn. Ct. App. 1975).

Wife points us to Husband's testimony about one piece of property in Loudon County which Husband admitted that he rents out. However, Husband testified that this property has never been a good rental property and has never turned a profit. Insurance and taxes exceed any rent collected. He considers his renter, a single mother, to be a charity case, and he often allows her to pay her rent by allowing relatives to do work on the house. Such equivocal cross-examination testimony, especially in the absence of any documents, does not make the strong showing needed for us to reverse the trial court on the issue of Husband's credibility with respect to rental income.

V.

The judgment of the trial court is affirmed in part and vacated in part. That part of the judgment following the holdings of **Pruett** and **Boyd** to require application of the 2006 version of the Guidelines to the petition to modify filed October 23, 2001, is affirmed. That part of the judgment that set specific support amounts for Husband prior to January 1, 2008, without allowing a modification upward by a percentage of the difference in the amount that Husband was paying under the straight percentage method, *i.e.*, $1,000.64, and the amount Husband was required to pay under the 2006 Income Shares formula is vacated. The portion of the trial court's judgment setting child support from January 1, 2008, forward is affirmed.

Costs on appeal are taxed to Husband. This case is remanded to the trial court, pursuant to applicable law, to recalculate Husband's support for the periods of time before January 1, 2008, by adding to the amounts decreed by the trial court in its last order, a percentage of the difference between the amount Husband had been paying as ordered by Master No. 1, *i.e.*, $1,000.64, and the amount as calculated under Income Shares. The trial court on remand shall determine the various percentages by which support shall be increased for the periods of time prior to January 1, 2008, but not to be less than 50%.

_____
CHARLES D. SUSANO, JR., JUDGE