# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
September 16, 2005 Session

## TRACEY L. WILLIAMS OMOHUNDRO v. STEPHEN C. ARNSDORFF

**Appeal from the Circuit Court for Hamilton County**
**No. 96DR2187     Jacqueline E. Schulten, Judge**

 **Filed September 27, 2005** 

**No. E2005-00315-COA-R3-CV**

---

The issues in this case are whether the trial court erred in granting a non-custodial parent unsupervised visitation and in limiting the number of witnesses at trial. Father, the custodial parent of the minor child, contends that the trial court's grant of unsupervised visitation to mother is not in the child's best interest and ignores evidence that mother abused the child. Father also argues that the trial court erred in refusing to hear witness testimony as to mother's abuse of the child and as to mother's mendacity. We find that the evidence supports a finding that unsupervised visitation is in the child's best interest and, therefore, the trial court's award of unsupervised visitation to mother was not an abuse of discretion. We further find that the witness testimony excluded by the trial court was cumulative, and therefore the trial court did not abuse its discretion in excluding the witnesses. Accordingly, we affirm the judgment of the trial court and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Cause Remanded**

SHARON G. LEE, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and D. MICHAEL SWINEY, JJ., joined.

Marvin Berke and Megan C. England, Chattanooga, Tennessee, for the Appellant, Stephen C. Arnsdorff

Jennifer H. Lawrence, Chattanooga, Tennessee, for the Appellee, Tracey Williams Omohundro

**OPINION**

I.

The appellant, Stephen C. Arnsdorff, (hereinafter "Father") and the appellee, Tracey L. Williams Omohundro, (hereinafter "Mother"), were divorced by order entered February 21, 1997. At the time of the divorce, the parties had one minor child, Lili, who was born on August 13,1994.

Initially, the parties agreed to joint custody of Lili with Mother having primary residential custody. However, on February 26, 2001, Father filed a petition requesting that he be granted sole and exclusive residential custody of the child upon allegations that she had been psychologically and physically abused by Mother. The petition further requested that an order issue restraining Mother from abusing the child and from coming about the child and Father. The trial court granted Father's request for a temporary restraining order and gave him temporary residential custody of Lili. Thereafter, by order entered June 18, 2001, the parties agreed that Father would have primary residential custody of Lili and that all visitation between Lili and Mother would be supervised by a psychologist, Dr. Susan O'Hara. The order further provided that after six months either party would have the right to petition the court for a change in the visitation arrangement.

On July 13, 2001, the trial court entered an order relieving Dr. O'Hara of responsibility for any treatment and therapy of Lili and transferring such responsibility to psychologist, Dr. Roy Smith. The order decreed that Dr. Smith conduct a psychological evaluation of Lili, pending completion of which, visitation between Lili and Mother was to be supervised by an individual named by the court or another person of Dr. Smith's choosing. A subsequent order entered in the case on August 26, 2002 sets forth the scope of testing and evaluation to be performed upon both Lili and her parents by Dr. Smith as follows:

> 1) An evaluation of Lili Arnsdorff in an effort to determine whether Lili was struck by her mother;
> 2) An evaluation of the current mental health functioning of both parents, especially as it relates to the quality of the parent child bonds, and to make recommendations, as deemed necessary for further treatment of either and/or both parents;
> 3) An evaluation of the current parenting skills of both parents, with recommendations, as necessary, as to further treatment needs of both parents in this regard;
> 4) An evaluation in an effort to determine if there is a current present danger of physical abuse of Lili by her mother, without an assumption of prior physical abuse;
> 5) An evaluation of Lili to determine Lili's current mental health functioning with particular focus on whether, and to what extent, the parents' conflict has affected her and may still be affecting her; and

6) To recommend, based on all the findings, treatment for both parents and/or Lili.

On April 21, 2004, the trial court entered a memorandum opinion adopting Dr.Smith's recommendations regarding visitation between Lili and Mother based upon his evaluation. These recommendations provide that visitation between Lili and Mother begin with four weeks of supervised visitation at a specified non-residential location and that, if these visitations are accomplished without incident, Lili begin visitation with Mother at Mother's home beginning with five hour visits every other weekend, culminating in full weekend visits every other weekend.

On June 1, 2004, Father filed a motion requesting a hearing with respect to the question of unsupervised visitation between Lili and Mother. The matter was heard on July 15, 21, and 22, 2004, after which the trial court entered its memorandum opinion. This opinion sets forth the following findings and conclusions:

## STATEMENT OF THE CASE

This case involves a dispute regarding appropriate parenting time for the Mother of 10 year old Lili Arnsdorff.

## ISSUES

Should the Mother be allowed parenting time with Lili?
If parenting time is allowed with Lili, should it be supervised?

## FINDINGS OF FACT

Lili is a 10 year old little girl who has been basically estranged from her Mother for over 3 ½ years. The parents were married three years before divorcing when Lili was just 2 years old.

Initially, the Mother was named the primary residential parent. By Agreed Order entered June 18, 2001, the Father was named primary residential parent and parenting time by the Mother was to be supervised by Dr. Susan O'Hara for a period of six months. After that time, either party could petition the Court to change the visitation. The Agreed order was approved after Father filed a petition for Modification and Restraining Order alleging physical abuse by the Mother, among other things.

The parties have never been able to effectively communicate after the divorce.

A detailed order entered on August 26, 2002 prescribed the evaluation which was to be performed by Dr. Roy Smith, the Court appointed examiner. This comprehensive report is Exhibit 1. At trial, Dr. Smith opined that Lili does have

a genuine fear of being alone with her Mother. However, he also stated Lili would never get over being afraid of her Mother without eventually seeing her Mom alone. The Court found as significant Dr. Smith's opinion that if Lili never gets her Mom back, Lili could have severe conflict with her own daughter later in life. Dr. Smith referred to this concept as "transgenerational pattern."

Dr. Smith found Lili to have an extremely active imagination. In his twenty-five years of practice, Lili has "absolutely the most active imagination" he has seen. She exhibited to Dr. Smith a determined aspect of herself which wants to maintain negative feelings towards her Mother, all the while detecting Father's beliefs that Mother is a bad mother.

Given the allegations Lili has made against her Mother, assuming each and every one to be true, the Court is put in a position of believing that this abuse began after the divorce because Father has testified Mother was an excellent Mother during their marriage but for occasional arguing in front of the child. If each and every allegation Lili made to her Dad about her Mom is believed, then the Court has to accept as true that the Court is dealing with a demon mother who abuses her child. Mother's clinical testing by Dr. Smith does not support that theory. What is supported by testing is that Mother did slap or strike or hit her child more than once, that Mother has low self-esteem and puffs her resume to other[sic] by lying about her academic accomplishments.

Dr. Smith's clinical testing of Father finds that he is not a substance abuser, does not like to admit any faults on his own part, is very goal oriented, and is mildly defensive. The testing revealed that Mom is the bulls eye of Father's target; he will doggedly pursue her regarding these abuse issues.

Lili's testing indicates a strong preference for her Dad to have custody but that she also has a significant attachment to her Mother. Dr. Smith opined that Lili is psychologically agitated with her Mother but wants to have a relationship with her Mother and needs to spend time in conversation with her. Dr. Smith's report states he reviewed progress notes by therapist Brenda Niel and Dr. Susan O'Hara, visitation summaries from Four Points, where the Mother exercised her supervised visitation, the deposition of Pediatrician, Eleanor Stafford, the Court ordered evaluation of Lili and her parents by Dr. William Hilner, numerous notes and letters between the parties. The Court has also reviewed these documents and its own notes before rendering an opinion.

In December of 2001, Mother filed her own Petition to Modify the Agreed Order entered on April 18, 2000, so that she could reestablish her relationship with her daughter. The Court appointed a Guardian Ad Litem on April 12, 2002, upon the request of the Mother. On February 27, 2004, the Guardian Ad Litem filed a

Motion for Instructions upon which the Court entered its Memorandum opinion of April 21, 2004, which temporarily adopted the recommendations of Dr. Roy Smith's report pending a final hearing on all issues. The Court has also reviewed the report and recommendation of the Guardian Ad Litem.

PRINCIPLES OF LAW

The parties have agreed that Father should be the primary residential parent. Therefore, the only analysis the Court must make in this matter is whether it is in the best interest of Lili that Mother have unsupervised visits with Lili and whether the restrictions in T.C.A. §36-6-406 apply in this case.

ANALYSIS AND CONCLUSIONS OF LAW

The Court has determined that any abuse which did occur between Lili and her Mother would have occurred in 2000 and 2001, at a time when Lili was five or six years of age. Whether this abuse actually occurred is something that the Court cannot determine. It is apparent from the testimony of Dr. Smith and others, that Lili believes it did happen. From the totality of the evidence in this case and a review of the parameters of T.C.A. §36-6-406, the Court finds that none of the factors are germane.

The Court believes that an immediate return to overnight visitation without a weaning process would be detrimental to the child. Since the hearing of this case in mid-July of 2004, the Court ordered from the bench that Lili was to visit with her Mother for two hour sessions twice a week, the first two to be conducted at a playground or similar place and the second two would be at the Mother's home, all of those visits would be in the company of a third adult of Mother's choosing.

THE ORDER

In order to facilitate a reunification of Lili and her Mother, the Court makes the following ORDERS:
1. Joint therapy between Lili and her Mom will be conducted by Jan Sherbak. The Mother is also to see Jan Sherbak. Lili will be counseled by Brenda Niel, if Mrs. Niel feels she can be objective. The Father will be seen by Dr. Ron Wigley and will see the Mother, Father and Lili if he feels this is appropriate and is workable for a period of time of group therapy. Dr. Roy Smith will be the consolation counselor between all the therapists. His role will be to moderate and to try to work through any problems which may arise between the various therapists.
2. Lili will continue weekly two hour visits under supervision as they have been conducted since the hearing in mid-July until November 12, 2004;

3. As stated above, Dr. Wigley will be the counselor who will work through any problems that may occur during the work of all the therapists with the individual and joint parties;

4. Once all of the above occurs, beginning November 12, 2004, Lili shall stay with her Mother beginning on that Friday evening from 6:00 p.m. until the next day at 1:00 p.m. for seven consecutive weeks. Then beginning on January 7, 2005 for four consecutive weeks, Lili will spend the night with her Mother each and every Friday night from 6:00 p.m. until 6:00 p.m. on Saturday. Once accomplished, regular visitation will ensue every other weekend from 6:00 p.m. on Friday until 6:00 p.m. on Sunday evening;

5. All parties are required to sign release forms allowing the therapists to discuss the case with each other for the purposes of planning, assessment and coordination of treatment;

6. That copies of Dr. Roy Smith's and Robin Miller's report shall be sent in their entirety to each of the treating therapists;

Upon motion by Father, the trial court entered an additional order on January 27, 2005, to allow three supervised visitations before the end of the year before beginning unsupervised visitation pursuant to paragraph four of the above order of November 10, 2004. Thereafter, Father filed the instant appeal.

II.

We restate the issues presented for our review as follows:

1) Did the trial court's award of unsupervised visitation between Mother and Lili violate Tennessee statutory law set forth at Tenn. Code Ann. §§ 36-6-301, 36-6-112 or 36-6-106?

2) Did the trial court's limitation of witness testimony at trial constitute reversible error?

III.

In a non-jury case such as this one, we review the record *de novo* with a presumption of correctness as to the trial court's determination of facts, and we must honor those findings unless there is evidence which preponderates to the contrary. Tenn. R. App. P. 13(d); *Union Carbide v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). When a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to the trial court's factual findings. *Seals v. England/Corsair Upholstery Mfg. Co., Inc.,* 984 S.W.2d 912, 915 (Tenn. 1999). Further, "[o]n an issue which hinges on the credibility of witnesses, the trial court will not be reversed unless there is found in the record clear, concrete, and convincing evidence other than the oral testimony of witnesses which contradict the trial court's findings." *Galbreath v. Harris*, 811 S.W.2d 88, 91 (Tenn. Ct. App. 1990), citing *Tennessee Valley Kaolin Corp. v. Perry*, 526 S.W.2d 488, 490 (Tenn. Ct. App. 1974). The trial

-6-

court's conclusions of law, unlike its conclusions of fact, are accorded no presumption of correctness. *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 35 (Tenn. 1996); *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn. 1993).

With specific regard to the review of a trial court's ruling on visitation, the Tennessee Supreme Court restated the standard as follows in *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001):

> [T]he standard for appellate review of a trial court's visitation order is controlled by our decision in *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988). There, we noted that " 'the details of custody and visitation with children are peculiarly within the broad discretion of the trial judge.' " *Id.* At 429 (Quoting *Edwards v. Edwards*, 501 S.W.2d 283, 291 (Tenn. Ct. App. 1973)). Accordingly, we held that a trial court's decision [on visitation] will not ordinarily be reversed absent some abuse of that discretion." *Id.*

> In reviewing the trial court's visitation order for an abuse of discretion, the child's welfare is given "paramount consideration," *id.* (quoting *Luke v. Luke*, 651 S.W.2d 219, 221 (Tenn. 1983)), and "the right of the noncustodial parent to reasonable visitation is clearly favored." *Id.* Nevertheless, the noncustodial parent's visitation "may be limited, or eliminated, if there is definite evidence that to permit ... the right would jeopardize the child, in either a physical or moral sense." *Id.* (quoting *Weaver v. Weaver*, 37 Tenn. App. 195, 261 S.W.2d 145, 148 (1953)).

> Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to propriety of the decision made." *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000). A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999). The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998).

IV.

A.

We first address Father's argument that the trial court's award of unsupervised visitation between Mother and Lili violated Tennessee statutory law set forth at Tenn. Code Ann. §§ 36-6-301, 36-6-112 and 36-6-106.

First, Father argues that the trial court violated that portion of §36-6-301 which states that if, in granting rights of visitation between a non-custodial parent and a child, "the court finds that the non-custodial parent has physically or emotionally abused the child, the court may require that visitation be supervised or prohibited until such abuse has ceased or until there is no reasonable likelihood that such abuse will recur."

In support of this argument, Father cites *Crabtree v. Crabtree*, 716 S.W.2d 923 (Tenn. Ct. App. 1986) wherein the custodial mother of a minor child requested that the trial court suspend or terminate the noncustodial father's visitation privileges upon allegations that the father had sexually abused the child. Although in that case we affirmed the trial court's denial of the mother's request based upon a finding of insufficient evidence, we noted that "where the child's state of mind shows that he or she has a real fear of one parent based on the real or imagined mistreatment by that parent, that is sufficient to persuade this court to exclude the child from the company of that parent except under proper supervision." *Id.*, at 927. In the matter now before us, Father asserts that evidence supports Lili's allegations that Mother "did physically abuse her by striking or hitting her on numerous occasions" and that "[t]hese incidents created a 'real or imagined fear' of being alone with the mother." Father contends that "[t]he record does not support an award of unsupervised visitation where there is no evidence to suggest that the fear of the child that her mother will continue to abuse her has subsided."

Father correctly states that the evidence supports Lili's allegations that Mother struck or hit Lili and that this created in Lili a real or imagined fear of being alone with Mother. In its opinion, the trial court recognizes that testing supports a finding "that Mother did slap or strike or hit child more than once" and that "Dr. Smith opined that Lili does have a genuine fear of being alone with her Mother." Although we acknowledge that Lili fears Mother as the result of past abuse, we do not agree that this fact prohibits the award of unsupervised visitation under the circumstances in this case.

The record before us presents no evidence of any physical abuse by Mother since 2001. Father correctly points out that "even though there was no evidence of recent physical abuse, there had been <u>no alone time</u> with the mother in three years"(emphasis in original). The obvious implication of this fact is that while it has been shown that Mother will not abuse Lili when supervised, it has not been shown that Mother will not abuse Lili once supervision is removed. However, the only means of determining with *absolute* certainty whether Mother will presently engage in abusive behavior absent supervision is to remove supervision. While Father apparently argues that this approach exposes Lili to an unacceptable risk of abuse, Dr. Smith testified at trial that he does not detect "a significant risk" in this regard. "I think by now this mother has to have seen that whatever actions she took were inappropriate actions, very costly actions and ones that have to be changed on her part if she ever hopes to have a relationship, a real relationship with her daughter." In the following testimony, Dr. Smith discusses conclusions he reached as to Mother's current tendencies "to become frustrated and express the frustration in a physical way":

Now, I didn't see any evidence that this is still happening now. In fact, there are a lot of test results in here that would suggest that anger and frustration are well controlled now. There are two different objective psychological tests where the results would suggest that.

.... There are also indications that she has another very frustrating child, Sam, who is very high energy, a lot of demand, a lot of need, and there's no indication that she has mistreated him in any way from three different sources of information that I have.

So that would suggest to me that it's not a current problem, though I think, in all likelihood, it was a past problem at one time that did contribute to Lili's fearfulness of Mom.

As to Lili's present fear of being left alone with Mother, Dr. Smith testified as follows:

The broad brush stroke conclusions that I saw in this evaluation were that Lili is significantly fearful, really very fearful of her mother, but at the same time I think has a very strong need to reconnect with her mother, and there's a lot of evidence for that we can go into if we need to.

So when I look at the fearfulness that she has, I think there are two different major contributing factors. One is, in my opinion, based on all the test results, I think there have been some physically harsh or inappropriate things, whether there was one incident or more, I think it very likely did happen when Mrs. Omohundro was disciplining Lili.

However, I think that the fear that came out of that has been exaggerated by Lili. I'm not saying deliberately, but I think there are psychological forces that are causing her to exaggerate that significantly and so that in Lili's perception that fear has become much larger than the reality of what happened.

And I think the factors that contribute to that exaggeration are, one, Lili's very active imagination, which is very well documented in the results that I have on her.

Her - - at this point, she's taking things that are not - - that are clearly not connected to her mother and incorporating those into a negative picture of her mother. There's a very determined aspect to her maintaining a negative perception of her mother. All of that is one element that goes into it.

I think another one is that at a subtle level she detects her father's feelings toward her mother. I'm not saying that Mr. Arnsdorff goes around the house blaspheming

the mother, because I don't think that that happens, but I think Lili is aware that Dad has some pretty strong , very deeply held, beliefs that mother is a bad person and a bad mother, and I think this is another contributing factor.

Acknowledging Lili's fears of being alone with Mother, Dr. Smith attests that those fears will not be allayed by continuing supervised visitation:

> Here's the concern I've got, that given - - that from what I see, very significant parts of her global fearfulness of Mom are really not related to the reality of Mom. Those factors are still going to be operating, and we could go on for very long periods of time of supervised visits, I think, without it making much of a dent in Lili's global fearfulness of Mom and her negative perception of Mom. I don't think we'll get there going down that road, if getting there means the end result of reestablishing this relationship and it going well and Lili being treated well, which is why I think, even though she is fearful, the only way she's going to see that it's not going to happen is to get into the situation with her mom real-life and see.

After stating that unsupervised visitation is necessary to reestablishing the relationship between Lili and Mother, Dr. Smith describes the dangers to Lili of not reestablishing that relationship:

> Well, the most obvious [danger] is that she never really gets her mom back, for one.
>
> Second is that she goes into adulthood with a locked-in memory of her mom being an abuser.
>
> A third is that if you look back - - when I look into cases that I see with families, where there has been significant emotional cutoffs between mothers and daughters, the chance that then that daughter when she grows up and becomes a mother of her own has some severe conflict that cuts her off from her own daughter is much higher when this type of issue is not resolved. It goes forward and becomes one of those transgenerational patterns that goes down the line, not 100 percent of the time, but a higher frequency of the time than when this is not resolved and reestablished.

The testimony of Dr. Smith indicates, if implemented, unsupervised visitation will have positive consequences and, if not, negative consequences will likely result. While we agree that a child's real fear of his or her parent is sufficient to permit a court to require supervised visitation, we do not agree that such fear mandates supervised visitation under all circumstances. In this case, the evidence indicates that unsupervised visitation is appropriate, and we conclude that the trial court's award of same did not violate Tenn. Code Ann. §36-6-301.

Father asserts that various witnesses testified that abuse occurred and argues that "[b]ecause abuse existed, the trial court should have considered the possible emotional and physical harm of the child before surrendering the child to the mother in an unsupervised setting." Father asserts that "Tennessee case law recognizes that where there is clear evidence that visitation would result in physical, emotional, or moral harm to the child, visitation should be limited or even prohibited." Father cites subsection (d) of Tenn. Code Ann. §36-6-112 which provides that "[i]f an allegation that a child is abused is supported by a preponderance of the evidence, then the court shall consider such evidence of abuse in determining the visitation arrangement that is in the best interest of the child, and the court shall not place a child in the custody of a parent who presents a substantial risk of harm to that child." Father also cites subsection (8) of Tenn. Code Ann. §36-6-106 which provides that in a proceeding to determine child custody where there are allegations of child abuse "[t]he court shall consider all evidence relevant to the physical and emotional safety of the child, and determine by a clear preponderance of the evidence, whether such abuse has occurred. The court shall include in its decision a written finding of all evidence, and all findings of facts connected thereto. In addition the court shall, where appropriate, refer any issues of abuse to the juvenile court for further proceedings."

As we have noted, the abuse testified to in this case occurred several years ago. We have also noted Dr. Smith's testimony that there is no longer a significant risk that abuse will occur. It is apparent from the trial court's decision that it correctly focused upon the best interest of Lili under *present* circumstances. As court appointed psychologist since 2001, Dr. Smith observed interaction between Lili and Mother; extensively tested and interviewed Lili and her parents; and consulted with numerous health care professionals involved in this case and reviewed their reports and a large quantity of other written material relevant to this matter. The court's decision to award unsupervised visitation is supported by the testimony and report of Dr. Smith that unsupervised visitation is in Lili's best interest at this time. Our review of the record does not reveal a preponderance of evidence to the contrary.

B.

The second issue we address in this appeal is whether the trial court committed reversible error by limiting the number of witnesses Father was allowed to call at trial.

The admission or exclusion of evidence is within the trial court's discretion. *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 222 (Tenn. Ct. App. 1999). A trial court's exercise of discretion will not be reversed by an appellate court simply because the trial court chose an alternative that the appellate court would not have chosen. See *Overstreet v. Shoney's Inc.*, 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999). If the appellate court concludes that the trial court improperly excluded otherwise admissible evidence, the judgment will not be reversed unless it is shown the excluded evidence would have affected the outcome of trial. *White v. Vanderbilt Univ.*, at page 223.

The record confirms that the trial court limited Father to three witnesses of his choice on issues of Mother's credibility and upon her past abuse of Lili and that the court refused to allow the

testimony of five additional lay witnesses Father attempted to call at trial. Father asserts that these witnesses would have testified that Mother had abused Lili and that Mother had not been truthful in the past. Father argues that both the question of abuse and the question of Mother's veracity were main issues in the case and that the trial court's refusal to hear witness testimony regarding these issues was reversible error.

In support of his argument, Father relies upon *Conlee v. Hillsman*, 285 S.W. 35 (Tenn. 1926), in which the Tennessee Supreme Court reversed the decision of the lower court where the court had limited the number of witnesses available to each party in the case. The Court stated that, while the trial court may limit the number of witnesses on collateral matters, " a trial court should not limit the number of witnesses of either party, plaintiff, or defendant, upon the only issue, or upon any one of the controlling issues in a suit." *Id.*, at page 39. Father also relies upon Tenn. Code Ann. §36-6-106(a)(8) which provides that where there are allegations of child abuse in a child custody proceeding "the court *shall* consider *all* evidence relevant to the physical and emotional safety of the child, and determine, by a clear preponderance of the evidence, whether such abuse has occurred."

Our review of the offers of proof presented with respect to each of the five witnesses Father was precluded from calling at trial indicates that four of these witnesses would have given testimony tending to show that Mother has abused Lili in the past. However, the trial court found that Mother "did slap or strike or hit her child more than once" and, at oral argument before this Court, Father's counsel agreed that this constituted an "off hand" finding of abuse. Based upon our independent review of the record, we agree that the evidence in this case established the occurrence of past abuse. Given the important matter at stake here - the best interest of a child - we acknowledge Father's desire to provide the trial court with as many witnesses as were available on the issue of abuse and his resultant dissatisfaction when he was prohibited from doing so. However, further testimony regarding the abuse would have constituted cumulative evidence which may be excluded under the authority of Tenn. R. Evid. 403 which provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, *or needless presentation of cumulative evidence*" (emphasis added). We find that the trial court did not abuse its discretion by exercising its authority to promote judicial efficiency by limiting the number of witnesses in this case.

It further appears from the offers of proof submitted by Father that the excluded testimony of two witnesses would have confirmed the fact that Mother has on occasion untruthfully stated that she graduated from Harvard; that she was an attorney; and that she was a financial advisor. However, the trial court's opinion recognizes that Mother "puffs her resume to others by lying about her academic accomplishments." And, in his testimony, Dr. Smith acknowledges that "there were times where [Mother] impulsively would say things that were not true in order to bolster her self-esteem, two examples being a degree from Harvard and being an attorney, neither one of which was accurate." Mother's propensity for mendacity was established at trial and acknowledged by the court in its opinion. It is clear that any further testimony in regard to Mother's credibility would have been

cumulative and, under authority of Tenn. R. Evid. 403, the trial court was permitted in its discretion to exclude such testimony.

We recognize that Tenn. Code Ann. §36-6-106(a)(8) does state that where there are allegations of abuse, "the court *shall* consider *all* evidence relevant to the physical and emotional safety of the child." However, as we have stated, the trial court was aware of past abuse when it reached its decision in this matter, and it is our determination that further testimony in that regard would not have affected the trial court's award of unsupervised visitation which was clearly based upon additional evidence showing that it is unlikely that Mother will commit abuse at present or in the future. T.R.A.P. 36(b) provides as follows:

> Effect of Error. - A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process.

We do not find that the trial court's exclusion of witness testimony regarding past abuse either affected its judgment or resulted in prejudice to the judicial process and it is, therefore, our determination that, to the extent the exclusion of such testimony was error, such error was harmless.

V.

For the foregoing reasons, we affirm the judgment of the trial court and remand for collection of costs. Costs of appeal are assessed to the Appellant, Stephen C. Arnsdorff.

_____
SHARON G. LEE, JUDGE

-13-