IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 28, 2015 Session

## MICHAEL SHUTES v. UNIVERSAL UNDERWRITERS SERVICE CORPORATION

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-000619-12      Rhynette N. Hurd, Judge**

---

**No. W2015-00625-COA-R3-CV – Filed December 14, 2015**

---

The issue presented in this case involves a vehicle services contract Appellant purchased from Appellee. The engine in Appellant's vehicle covered under the contract expired due to a lack of lubrication caused by a combination of engine sludge and low oil. Appellee denied coverage for the repairs under exclusions in the contract. Appellant filed suit alleging breach of contract and violations of the Tennessee Consumer Protection Act. After a bench trial, the trial court found in favor of Appellee. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN and KENNY ARMSTRONG, JJ., joined.

Kevin A. Snider, Germantown, Tennessee, for the appellant, Michael Shutes.

Edward Inman Curry and Dennis Patrick Hawkins, Memphis, Tennessee, for the appellee, Universal Underwriters Service Corporation.

## OPINION

### BACKGROUND

Appellant Michael Shutes ("Shutes") purchased a used 2006 Cadillac V6 CTS ("the vehicle") from Suzuki Volvo of Memphis ("Suzuki") on March 29, 2010. At the time of the vehicle purchase, Shutes also purchased a vehicle services contract ("services contract") written by Appellee Universal Underwriters Service Corporation, d/b/a Zurich, ("Zurich") for $1,707.00. The services contract pertained only to the powertrain, which includes the engine and transmission.

Eight months later, in November 2010, Shutes was driving from Jackson, Tennessee to Memphis when the vehicle began making "knocking noises" and producing a burning smell. Shutes pulled over and had the vehicle towed to Serra Chevrolet ("Serra") in Jackson for inspection and repairs. After disassembling the vehicle's engine, Serra's mechanics determined that there was no oil in the engine, that there was a significant amount of engine sludge in the engine, and that the engine needed to be replaced at an estimated cost of $7,296.21. Shutes subsequently reported the problem to Zurich, who ultimately denied coverage on the basis that its services contract did not cover problems caused by insufficient lubricants or improper maintenance.

On July 7, 2011, Shutes filed a Civil Warrant in the Shelby County General Sessions Court asserting, among other claims, breach of contract and violations of the Tennessee Consumer Protection Act. The general sessions judge rendered a decision in favor of Shutes on February 7, 2012. Zuirch appealed to the circuit court. The circuit court heard testimony in this matter on March 4, 2015.

Shutes testified that he understood the services contract to cover the powertrain only. However, he claimed that he only received a one page warranty document, a copy of which he produced at trial. When asked why he provided a copy of the document and not the original, Shutes claimed that he left the original at home. According to Shutes, the copy of the services contract document he signed did not contain specific terms, conditions or exclusions. Michael Gross, the salesperson who sold both the vehicle and services contract to Shutes testified that it was Suzuki's custom and practice to give a customer the entire contract and that he had no reason to doubt that he did so in Shutes' case. In addition, Mr. Gross claimed that the memory of this particular sale stood out in his mind because he drove to the home of Shutes' co-signer to assist with the paperwork, which was out of the ordinary for his business practice.

Shutes recounted that, in November 2010, he checked the oil in the vehicle prior to traveling from Memphis to Jackson for Thanksgiving, and admitted that the oil was "low," measuring roughly two quarts. Shutes testified that he drove the vehicle to and around Jackson during the Thanksgiving holiday. Shutes also stated that he did not check the oil in the vehicle again prior to leaving Jackson to return to Memphis. According to Shutes, the oil indicator light never came on.

Shutes indicated that he drove the vehicle approximately 18,000 miles between its purchase in March and the engine trouble in November. During his testimony, Shutes stated that he had the vehicle's oil changed on July 23, 2010, and produced a document he claimed was an invoice or receipt for the oil change. The invoice was issued by a Memphis area tire and alignment business on July 23, 2010, and was made out to Shutes' place of work in the amount of twenty-five dollars. The invoice indicated that the

twenty-five dollar charge was for "parts" and did not include a charge for labor, nor did it include any vehicle information. Shutes claimed that there was no question in his mind that he had the oil changed and that he did not did not misuse or damage the vehicle at any time, nor did he operate the vehicle without oil.

Shutes testified that the mechanics at Serra who inspected his vehicle said there was no oil and discovered "[a] lot of sludge" in the engine. Noel Webb, the Serra mechanic who inspected the vehicle, testified that "there was oil in the car, it just -- I'm not sure of the level of the oil." Mr. Webb recounted that he was present when his team broke down the vehicle's engine and discovered "a quarter-inch of sludge throughout the engine," an amount he described as "excessive." Mr. Webb admitted that he had no records of maintenance on the vehicle but that it was his lay opinion that the amount of sludge in the engine normally occurs when a vehicle has not been maintained. He further testified that it was his opinion that the engine expired from a lack of lubrication and that the sludge played a role in that process.

Terry Johnson, a master mechanic, also testified as an expert on behalf of Shutes. Mr. Johnson stated that the engine had already been disassembled when he looked at it and that he had no knowledge of whether the vehicle had any oil when Serra received it. He noted that the engine contained "more [sludge] buildup than [he'd] ever seen in a car before." In Mr. Johnson's opinion, it would take "at least years" for this amount of buildup in the vehicle's engine to accumulate. He claimed that there was "no way you could have this type of buildup in a car over seven months" and that the buildup he observed was probably in the engine at the time Shutes purchased the vehicle. During his testimony, Mr. Johnson also described how complicated it would be to clean engine sludge out of the engine without taking the engine apart and opined that a consumer would not know that an engine sludge problem existed without looking at the vehicle's service record. However, Mr. Johnson also testified that a vehicle such as Shutes' should typically have four to six quarts of oil in it and that he would not recommend driving the vehicle on a trip with only two quarts of oil. In addition, he opined that the oil should be changed in a vehicle every three to five thousand miles and that a vehicle should have three to four oil changes within 18,000 miles. In Mr. Johnson's opinion, some engine sludge could accumulate in 18,000 miles without regular oil changes but not the amount he observed in Shutes' vehicle.

The trial court issued an order in favor of Zurich, finding that Shutes received a copy of the contract with Zurich and that the contract did not cover repairs caused by lack of lubricants, improper maintenance, or lack of maintenance. The trial court also found that Shutes was aware the vehicle was low on oil before taking a trip from Memphis to Jackson and did not put any oil in the vehicle at that time. The trial court found there was "no documentation of any maintenance or oil change produced by [Shutes] at the trial"

3

and that Zurich had a reasonable basis for denying Shutes' claim under the contract "based on the condition of [Shutes'] vehicle which demonstrated a lack of oil and maintenance." Shutes timely appealed.

## ISSUE

Shutes presents the following issue, which we have reworded:

Whether the trial court erred in finding for Zurich based on the evidence presented at trial.

## STANDARD OF REVIEW

Our review of the trial court's decision is governed by Rule 13(d) of the Tennessee Rules of Appellate Procedure, which states that we are to review the trial court's findings of fact de novo upon the record, with a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Williams v. City of Burns*, 465 S.W.3d 96, 108 (Tenn. 2015). "This means that we may not disturb the trial court's findings unless we determine 'that the aggregate weight of the evidence demonstrates that a finding of fact other than the one found by the trial court is more probably true.'" *Williams*, 465 S.W.3d at 108 (quoting *Nashville Ford Tractor, Inc. v. Great Am. Ins. Co.*, 194 S.W.3d 415, 425 (Tenn. Ct. App. 2005).

Because the trial judge is in the best position to assess the credibility of the witnesses, we are required to defer to the trial court's credibility findings, "including those that are implicit in its holdings." *Williams*, 465 S.W.3d at 120 (citing *Richards v. Liberty Mut. Ins. Co.*, 70 S.W.3d 729, 733-34 (Tenn. 2002); *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783-84 (Tenn. 1999); *Seals v. England/Corsair Upholstery Mfg. Co., Inc.*, 984 S.W.2d 912, 915 (Tenn. 1999)). "[O]n an issue which [hinges] on witness credibility, the trial judge will not be reversed unless, other than the oral testimony of the witnesses, there is found in the record clear, concrete and convincing evidence to the contrary." *Tennessee Valley Kaolin Corp. v. Perry*, 526 S.W.2d 488, 490 (Tenn. Ct. App. 1996). With these principles in mind, we turn to the substance of the appeal.

## DISCUSSION

We first address Shutes' assertion that he did not receive the full contract and thus was not aware of its terms, which forms the basis of his claim that Zurich violated the Tennessee Consumer Protection Act ("TCPA"). As noted above, we afford great deference to a trial court's findings of credibility, "including those that are implicit in its holdings." *See Williams*, 465 S.W.3d at 120. Here, the trial court considered conflicting

statements from Shutes and Mr. Gross, the salesperson who sold the services contract, pertaining to whether Shutes was provided the full contract. In its oral ruling, the trial court indicated that it "[found] it interesting" that Shutes said that his original copy of the services contract "was at home and all we had here at the trial was the front page." Seemingly finding Shutes' credibility low on that issue, the trial court found that Shutes received the full contract, as testified to by Mr. Gross. Because the record does not offer "clear, concrete and convincing evidence to the contrary," *Tennessee Valley Kaolin Corp.*, 526 S.W.2d at 490, we decline to disturb the trial court's finding that Shutes received the full contract. Our review of the record similarly affirms the trial court's finding that the services contract specifically excluded coverage for repairs caused by "misuse, alteration, abuse, negligence, or lack of proper maintenance or breakdowns caused by improper servicing or improper repairs, insufficient coolants or lubricants, rust and/or corrosion."

Shutes' remaining argument under the TCPA is that Shutes engaged in unfair and deceptive practices by allegedly never intending to honor the contract. Shutes asserts that he was told by Zurich that the vehicle's repairs would probably not be covered before Zurich knew what was wrong with the vehicle. However, Shutes' testimony demonstrates that he discussed the number of oil changes the vehicle had with Zurich over the phone when he reported the vehicle's damage. Other than that exchange, the record provides no facts to support Shutes' assertion that Zurich did not intend to honor the contract.

We next address the trial court's findings concerning Shutes' maintenance and use of the vehicle. The trial court found that Shutes was aware the vehicle was low on oil before embarking on a trip from Memphis to Jackson and did not put any oil in the vehicle at that time. Additionally, the trial court found that there was no documentation of any maintenance or oil change produced by Shutes at the trial. Our review of the record reveals that Shutes was aware the vehicle contained roughly two quarts of oil before he drove the vehicle to Jackson and did nothing to remedy the situation. While Shutes did produce a document alleged to be an invoice or receipt for an oil change on July 23, 2010, the document itself is lacking. As the trial court noted in its oral ruling, the invoice "does not appear to include an oil change, just the purchase of oil for $25.00…. It says one unit of oil was purchased, and it does not show who purchased it, for what purpose it was purchased, or anything of that nature." We conclude that the record supports the trial court's finding that Shutes did not produce documentation of an oil change.

Finally, we address the trial court's finding that Zurich had a reasonable basis for denying Shutes' claim under the contract based on the condition of Shutes' vehicle. The proof is clear, and both parties agree, that the engine failed due to a lack of oil. Shutes

claims that he properly maintained the vehicle during the eight months prior to its breakdown and that the damage was caused by pre-existing engine sludge over which he had no control. Shutes' expert testified that the sludge present in the engine could not have built up to that extent in the eight months Shutes owned and operated the vehicle. However, Shutes' expert also testified Shutes' vehicle probably needed between four and six quarts of oil to run properly and that he would not recommend driving a lengthy distance on an interstate on only two quarts of oil. Moreover, by the estimation of Shutes' expert, a properly maintained vehicle would have its oil changed between three and four times over the course of the 18,000 miles Shutes drove the car. The record contains insufficient proof that Shutes changed the oil even one time over the course of 18,000 miles, let alone three to four times. The only proof in the record pertaining to the amount of sludge that existed in the engine at the time of Shutes' purchase is the expert's opinion that the sludge could not have accumulated to that extent over the course of eight months. As noted above, a trial court is in the best position to determine a witness's credibility. "[E]xpert testimony, even if uncontradicted, is purely advisory and the trier of fact may retract it and arrive at a different conclusion if it finds such testimony to be unreasonable." *Landair Surveying Co. Of Tenn., Inc. v. Davis*, No. E2008-00299-COA-R3-CV, 2008 WL 4998470 at *6 (Tenn. Ct. App. Nov. 25, 2008)(citing *England v. Burns Stone Co., Inc.*, 874 S.W.2d 32 (Tenn. Ct. App. 1993)). On the other hand, the record provides abundant proof that Shutes failed to maintain the vehicle to the standards espoused by his own expert. Therefore, we conclude that the trial court's finding that Zurich had a reasonable basis for denying Shutes' claim is sufficiently supported by the facts in the record.

## CONCLUSION

For these reasons, we affirm the decision of the trial court. Costs of this appeal are taxed to the appellant, Michael Shutes and his surety, for which execution may issue, if necessary.

_____
BRANDON O. GIBSON, JUDGE